## PIERSON *vs.* TRAIL, TRUSTEE OF MILLER.

An insolvent's trustee has no right to apply to a court of equity, to distribute the funds in his hands. If he does and the usual notice is given to creditors to exhibit their claims, a person who has a claim may exhibit it, and if it be rejected, he may appeal from the order, and have the same reversed, on the ground that the court of equity had no jurisdiction.

APPEAL from Frederick county court, sitting as a court of equity.

Miller applied to Frederick county court for the benefit of the insolvent law, and Trail was appointed his trustee. The trustee afterwards filed an *ex-parte* petition, on the equity side of Frederick county court, stating that he had sold the property of the insolvent, and praying the court to order a distribution of the funds. The court by its order directed the trustee to bring the money into court, and that notice be given to creditors to file their claims. The appellant filed his claims, and the court afterwards rejected the claim of the appellants.

From the order of the court ratifying the auditor's account which rejected the claims of the appellant, he took this appeal.

This case was argued before all the judges.

By *Causin and Palmer* for appellants, and *Merrick* for the appellee.

On the part of the appellant, it was insisted, that the chancery court, has no jurisdiction; and consent can give no jurisdiction. *Story's Eq. Pl.,* 9 *sec.* 10, 34.

*Merrick* for appellee.

The act of 1841 precludes any exception or objection to the jurisdiction.

Much was said by counsel for and against the claims of the appellant, all of this is omitted, as the court had no jurisdiction.

Tuck, J., delivered the opinion of the court.

The appellee filed his *ex-parte* petition on the equity side of Frederick county court, alleging that he had sold the property of the insolvent, and praying that the fund might be distributed under the order and direction of that court. An order was passed declaring "that the petitioner was entitled to the relief he prayed, and directing him to bring the money into court, and that notice should be given to creditors to file their claims." The appellant and others, creditors of Miller, filed their claims, and after various proceedings, those of the appellant were rejected, so that he was not allowed any participation in the trust fund. From the order of the court ratifying the auditor's account, rejecting his claims, this appeal is taken.

The appellant contends, that the court below could not rightfully exercise jurisdiction over the subject matter, and that all the proceedings are therefore void. On the part of the appellee it is insisted, that this objection not having been made in the court below, cannot be availed of here.

The act of 1841, ch. 163, applies to defendants. The appellant was not a party to the original proceedings. He came in as a creditor, occupying the attitude of an actor, like other creditors seeking to recover their claims against the estates of insolvents, or deceased persons. As between himself and Schlosser and Fox, who were contesting his demands, and claiming a priority over him, he was not an actor; yet his relation to the *ex-parte* petition of the trustee was not that of a defendant. *Carter vs. Dennison*, 7 *Gill*, 157. In fact the court had assumed jurisdiction, and possessed itself of the trust fund before Pierson became a party to the proceedings; and coming in as he did, we are of opinion that he was under no obligation to present this objection in the court below.

The act of 1805, ch. 110, confides to the county courts the distribution of the estates of insolvent debtors. Until the act of 1849, ch. 88, an appeal would not lie from an order

distributing the trust funds. *Carter vs. Dennison,* 7 *Gill,* 157. And this jurisdiction is recognised in 5 *Gill,* 179, *Alexander vs. Ghiselin.* The trustee could have obtained the protection he sought, by the action of the county court, without invoking the jurisdiction of a court of equity. We must therefore sustain the objection now made by the appellant.

It would be improper in this court, in a case coming before us, as this does, to express any opinion on the several propositions argued at the bar, though requested by counsel to do so.

MASON, J., delivered the following dissenting opinion.

The question of jurisdiction as presented by the present record, arises under the act of 1841, ch. 163. By that act it is provided, that "a party who may have been *defendant* in the court below, shall not be permitted in the appeal court to urge or rely upon any objection to the jurisdiction of the court below, unless it shall appear by the record, that such objection was made or raised in said court." Whether the provisions of this law apply to the present case or not, depends entirely upon the question, whether Pearson, the appellant, is to be regarded as a defendant or not? In construing acts of Assembly, we should endeavor to arrive at the intention of the legislature from the terms of the law itself, and as far as possible effectuate that intention. What was the manifest purpose of the legislature in passing the law in question? Clearly to prevent the unnecessary accumulation of costs, and to avoid surprise and delay in legal proceedings, by requiring defendants to disclose their defences in the court below. In this respect, it is supplemental in its character to the act of 1825, ch. 117. The only reason why the provisions of the law were confined in terms to "defendants" and not to plaintiffs, must grow out of the fact, that the legislature never could have supposed that a party, after he had selected the forum for the adjudication of the case, would afterwards be permitted, even if he desired to do so, to repudiate its jurisdiction and powers ; while a defendant, who had no agency in the in-

stitution of the suit, should not be deemed to have acquiesced in the illegal assumption of jurisdiction by the court, unless he failed to make the objection while the cause was pending before the inferior tribunal. It would seem then that the act of 1841, was designed to give jurisdiction to the court of chancery in the particular cases described in the law, that is to say, in cases where the defendants do not raise the objection in time. Therefore, where a case is thus circumstanced jurisdiction attaches, and cannot afterwards be brought in question. For my own part, I cannot see why a liberal construction should not be given to this act, so as to carry out the manifest designs of the legislature in requiring parties to raise the question of jurisdiction in the court below, and thus save costs and prevent surprise. Will we give such a forced construction to this act, as to treat Pierson, the appellant, as a plaintiff? As before remarked, *the reason* of the law is as cogent, why *plaintiffs* should not be permitted to raise this question in the appellate court, as it is that defendants should not; and if plaintiffs are not embraced within the operation of the law, it is because a strict interpretation of its language will exclude them. It is our duty in construing this law so as to accomplish the purposes of the legislature, to treat all as defendants who might take advantage of the want of jurisdiction if they please to do so. In this case there is no difficulty in so regarding the appellant. After the *ex-parte* proceedings of the appellee were commenced, and the notice to creditors published, which was equivalent to a personal summons, the appellant becomes a party to the case by filing his claims and demanding his proportion of the assets. Now under those circumstances, is he plaintiff or is he defendant, in contemplation of the act of 1841 ? Did he institute these proceedings, or had he any agency in bringing the cause before the court ? None whatever. The entry on the docket shows the relations which these parties bear towards the case. It has been urged, that after these proceedings were instituted, the appellant came into them as a volunteer. This remark is equally true in regard to all defendants in cases *coram*

*non judice.* Where a court has no jurisdiction in a case, it has no power to compel the appearance of any of the parties, and therefore all defendants who may respond to such a proceeding, may be said to do so voluntarily. The appellant's rights were brought in question by the petition of the appellee, and he had either to defend them, or treat the assumption of jurisdiction by the court, with contempt and silence. If he had pursued the latter course, and suffered the court to have passed upon his rights, is it not obvious that he would have found himself obliged to resort to subsequent litigation, in order to avoid the consequences of the previous illegal proceeding? Therefore, to prevent such a result, it was manifestly to his interest to come in, and answer the proceeding, as he did. But how did he answer? Could he have objected to the jurisdiction of the court? Clearly he could in various ways, and thus have put an end to the case. But this he failed to do, and preferred to enter into the general struggle, for a share of the insolvent's estate; willing to take the benefits of a decree, if he could secure one in his favor, but all the while secretly holding in reserve a weapon of defence, to be used as a last resort, as a sure means of defeating his adversary in the end. Now, would such a cause be consistent with the spirit of the act of 1841, or even with abstract principles of justice? I think not.

In my opinion, so far as Pierson, the appellant, is concerned, this case is properly in court, and ought to be disposed of, in reference to its equities, and independent of the question of jurisdiction. I therefore dissent from the opinion of the majority of the court.

As regards the other question, the character and effect of the judgments of the magistrates court, I am equally clear. In my opinion it was irregular and improper, upon principle and authority, for the county court to have collaterally inquired into, and vacated those judgments. It is a well settled principle of law, that the judgment of a court of competent jurisdiction, is conclusive upon the matter decided, and cannot be collaterally impeached, upon the ground of informality or irre-

gularity in the proceedings, or error or mistake of the court. The subject matter of these judgments was clearly within the jurisdiction of the magistrate's court, and having been decided by that tribunal, cannot be impeached in any way, except upon an appeal regularly taken. Instead of pursuing that course, the party aggrieved seeks, in effect, to convert the court of equity into an appellate tribunal, to revise and reverse the judgments of the magistrates courts. Upon these grounds, I would reverse the decree of Frederick county court, as a court of equity, and remand the cause for further proceedings.

LE GRAND, C. J., and ECCLESTON, J., agreed with TUCK, J.

*Decree reversed.*