# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1889.

VICTOR H. BUSCHMAN *vs.* J. LELAND HANNA and JAMES C. SMITH, Permanent Trustees in Insolvency of GEORGE H. FORSTER and JOHN E. CLARK, trading as FORSTER, CLARK & CO.

*Attachment—Inchoate lien—Proceedings in Insolvency.*

On the 13th of January, 1888, an attachment on original process under the Act of 1864, ch. 306, was sued out by a creditor of a partnership, and laid in the hands of S. a conventional trustee under a deed of assignment for the benefit of creditors, made by one of the members of the partnership, to whom his co-partner had assigned his interest. Three days after the issuing of the writ of attachment, proceedings in insolvency were instituted against the members of the partnership, under which two persons were appointed permanent trustees of the insolvent firm. Said insolvent trustees then intervened in the attachment suit, and moved to quash the attachment, mainly on the ground that the assignment to S. was not fraudulent, within the meaning of the insolvent law, and at the same time they filed a petition claiming the property attached. The motion to quash was overruled, and the assignment to S. was held to be void as to the creditors of the partnership. The case then proceeded to trial, and in the attachment case judgment was rendered in favor of the trustees in insolvency, as claimants of the property attached. On appeal from this judgment it was HELD :

1st. That the setting aside the fraudulent deed did not entitle the plaintiff in the attachment to prosecute the suit to final judgment in order to perfect the inchoate lien acquired by the attachment proceedings.

1          v. 72.

2nd. That the adjudication in insolvency stopped all further proceedings against the property of the insolvents, and the same, upon their appointment and qualification, became vested in the trustees in insolvency, in whose favor the judgment of the Court below was properly rendered.

3rd. That said judgment, however, in no manner affected or impaired the inchoate lien acquired by said creditor under his attachment proceedings, but said lien followed the fund, or the proceeds arising from the sale of the property attached, into the insolvent Court.

4th. That if the attaching creditor would have been entitled to final judgment but for the intervention of the trustees in insolvency as claimants, the inchoate lien under the attachment would be recognized, and its priority allowed by the insolvent Court.

5th. That as there were assets in the hands of S., assignee, at the time the attachment was laid, said inchoate lien attached to and followed those assets in the insolvent Court as fully as if the attachment had been levied upon specific property.

The case of *Thomas vs. Brown & Lowndes*, 67 *Md.*, 512, explained.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Frank Gosnell,* for the appellant.

*William S. Bryan, Jr.,* and *Edgar H. Gans,* for the appellees.

*John P. Poe,* for Fielder C. Slingluff, Garnishee.

ROBINSON, J., delivered the opinion of the Court.

This case has been ably argued, but the question, after all, is one we think fully covered by the former

decisions of this Court. The difficulty, and the whole
difficulty, is owing, it seems to us, to a misapprehension
as to what was actually decided in *Thomas vs. Brown &
Lowndes,* 57 *Md.,* 512, arising, no doubt, from the some-
what imperfect report of the facts and circumstances on
which that decision was based.

Now what is the case now before us? On the 14th
December, 1887, the co-partnership of Forster, Clark &
Co. was dissolved, and on the same day Clark transferred
his interest in the firm assets to Forster, and the latter,
on the same day, made an assignment of all his property
to Fielder C. Slingluff, for the benefit of his creditors.
Shortly afterwards, on the 13th of January, 1888, the
appellant, a creditor of Forster, Clark & Co., sued out
an attachment on original process, under the Act of
1864, chap. 306, and laid it in the hands of Slingluff,
assignee, the plaintiff in the attachment alleging in his
affidavit that the assignment to Slingluff was made by
Forster, Clark & Co. with intent to defraud their credi-
tors. Three days after the issuing of the writ of attach-
ment, proceedings of insolvency were instituted against
Forster, Clark & Co., and the appellees were under these
proceedings appointed permanent trustees of the insol-
vent firm. The trustees then intervened in the attach-
ment suit, and moved to quash the same, mainly on the
ground that the assignment to Slingluff was not fraudu-
lent, within the meaning of the insolvent law, and at
the same time they filed a petition claiming the prop-
erty attached. On appeal to this Court, the motion
to quash was overruled, and the assignment to Slingluff
was declared fraudulent and void as to the creditors of
Forster, Clark & Co. The case then proceeded to trial
before the Court without the intervention of a jury, and
the plaintiff in the attachment, now appellant, recovered
judgment *in the short note case* against the defendant for
$1213.87; and in *the attachment suit,* judgment was ren-

dered in favor of the *trustees in insolvency,* as claimants of the property attached; and it is from the judgment in the *claim case* that this appeal was taken; the appellant contending that having laid his attachment in the hands of Slingluff, assignee, before proceedings of insolvency were instituted, he was entitled to prosecute the suit to *final judgment* in order to perfect the *inchoate lien* acquired by the attachment proceedings. Now the plain answer to this contention is that, upon their appointment and qualification, the assets and property of Forster, Clark & Co. in the hands of Slingluff under the fraudulent assignment, vested in the appellees as trustees of the insolvent firm, and this being so, there was nothing in the hands of Slingluff liable to condemnation.

It is well settled that an adjudication in insolvency stops all further proceedings against *the property* of the insolvent. It stops even the execution of a *fieri facias* in the hands of the sheriff, although levied on the property; and prior to the Act of 1888, chap. 275, it stopped the sale of mortgaged property, whether decreed to be sold by a Court of equity, or advertised for sale under a power in the mortgage itself. The trustee in insolvency takes the entire property of the insolvent, whatever may be the liens upon it, and, after converting such property into money, the proceeds of sale are *brought into the insolvent Court for distribution,* among the lien creditors and all other creditors, according to their legal precedence and priority. Whatever liens, if any there be, said the Court in *Glenn vs. Gill,* 2 *Md.,* 18, "must be settled by the decision of the tribunal to whom the trustee owes obedience." The policy of the insolvent law in thus bringing the entire property and all creditors into one Court, is to secure the speediest settlement of the insolvent estate, and to avoid possibly conflicting decisions which might arise from the distribution of the trust fund by different Courts. *Pierson vs. Trail,* 1

*Md.*, 144; *Waters vs. Dashiell*, 1 *Md.*, 471; *Glenn vs. Gill*, 2 *Md.*, 17; *Grove, Trustee of Lynch vs. Rentch*, 26 *Md.*, 378; *Mackubin vs. Boarman, Trustee, &c.*, 54 *Md.*, 389.

The judgment, however, in favor of the appellees as trustees in insolvency, in no manner affected or impaired the inchoate lien acquired by the appellant under the attachment. Ordinarily a final judgment of condemnation is necessary, it is true, to enable attaching creditors to perfect the inchoate statutory lien acquired under the attachment; for, till such judgment, the right of the plaintiff in the attachment is not established. But when further proceedings on the part of the attaching creditor are suspended by the insolvency of the debtor, and the trustees intervene and claim the property attached, the *inchoate* lien acquired under the attachment, follows the fund, or the proceeds arising from the sale of the property attached, into the *insolvent Court.* *That Court* has *full power to hear and determine all questions* as between the attaching creditor and the garnishee and the debtor, and as between these parties and all other creditors and claimants. And if the attaching creditor would have been entitled to final judgment, but for the intervention of the trustees in insolvency as claimants, the inchoate lien under the attachment will be recognized, and its priority allowed by the insolvent Court. In this case there were assets in the hands of Slingluff, assignee, at the time the attachment was laid, and the inchoate lien thereby acquired by the appellant *attaches and follows the assets* in the insolvent Court. As to the contention that the appellant did not acquire a statutory inchoate lien in this case, because the attachment was merely *laid* in the hands of Slingluff, and not *levied* on any *specific property*, we have but a word to say. The Code provides that "*any kind of property* or credits belonging to the defendant in the plaintiff's own hands,

or in the hands of *any one else* may be attached.'' Where specific property is attached, the attachment is levied on such property; but, where money or credits are attached, the inchoate lien attaches to the fund or credits when the attachment is laid in the hands of the garnishee. In the latter case, that *is of garnishment,* the judgment is a *personal judgment* against the garnishee. That an inchoate lien attaches to money or credits in the hands of the garnishee upon service of the attachment is fully recognized in *Main and McKellip, Garns. vs. Lynch,* 54 *Md.,* 658.

Now *Thomas vs. Brown & Lowndes,* 67 *Md.,* 512, out of the way, there could not, it seems to us, be any question as to the views we have expressed; and, to understand precisely what was decided in that case, the facts upon which the decision is based, must be stated more fully than will be found in the case as reported. What then were the facts in that case? Brown and Lowndes sued out an attachment on original process against Messrs. Thomas & Co., and on the 9th of August, 1882, laid it in the hands of the Farmers and Merchants' National Bank. One of the partners, having absconded, Samuel K. Thomas, the other partner, on the 26th of August, 1882, applied for the benefit of the insolvent laws. Other attachments were subsequently sued out by certain creditors of Thomas & Co., and these were also laid in the hands of the Bank. On the 15th of August, a bill in equity was filed by Stein Brothers, claiming to be equitable assignees of the money attached in the hands of the Bank, and praying that the Bank should be ordered to bring the money into Court, and for the appointment of a receiver, and for an injunction restraining the attaching creditors of Thomas & Co. from further proceeding with their attachments. Afterwards, in November, 1882, Rusk, the trustee in insolvency of Thomas & Co., also filed a bill in equity

against the attaching creditors, and against the Bank, and against Stein Brothers, praying that the money attached in the hands of the Bank should be decreed to be paid to him. A bill of interpleader was then filed by the Bank against the attaching creditors, Rusk, trustee, and Stein Brothers, and by order of the Court those cases were consolidated and the injunction theretofore granted was modified as follows: "The attaching creditors were allowed to prosecute their attachments in the Courts of law where they were pending, and in case of their obtaining judgments of condemnation against the garnishee, the said Bank, they should be restrained and enjoined from issuing execution upon said judgments, but should bring the same into said Circuit Court, in order that it should and might determine out of what funds or amount, if any, and in what manner, the same should be satisfied; and that all questions as to the amount in the hands of the said Bank subject to said attachments, and as to the rights and equities of the said firm of Stein Brothers, and Rusk, trustee, in the suits in this Court between themselves and the attaching creditors, and the said Bank, be reserved for adjudication."

Now it can hardly be necessary to say, there was error on the part of the Court in passing such an order as this. It was error, to direct the attaching creditors to prosecute their attachments to final judgments, because the insolvency of Thomas & Co. suspended further proceedings on the part of the attaching creditors, and Rusk, the trustee, as claimant, was entitled to the fund attached in the hands of the Bank. It was error on the part of the Circuit Court to reserve to itself the right to distribute the fund in the hands of the Bank, and to determine the rights and priorities, as between the attaching creditors and Stein Brothers, and Rusk, trustee. The insolvent Court was the Court to distribute the

fund, as part of the insolvent estate, having full power
to determine the legal and equitable rights of the parties.
But from this order, erroneous as it was, no appeal was
taken. On the contrary, Rusk, the insolvent trustee,
intervened in the *attachment suit,* and made a motion to
quash the attachment, and this being overruled, he filed
a claim of property. The claim of property thus made
by the trustee, was, on motion of counsel for the attach-
ing creditors, stricken out, as being in *contravention and
in contempt* of the order of the Circuit Court, from which
no appeal had been taken, and the trustee's claim being
out, the attachment case was tried and judgment was
rendered for Brown & Lowndes. It was from this judg-
ment that the appeal was taken in that case. And in
speaking of the right of the attaching creditors to go
on and perfect their inchoate lien by final judgment
of condemnation, notwithstanding the insolvency of
Thomas & Co., the Court must be understood as refer-
ring this right to the order of the Circuit Court, from
which no appeal was taken by the parties. The Court
did not mean, and so said, to overrule the well settled
law as laid down in *Alexander, et al. vs. Ghiselin,* 5 *Gill,*
138, that the distribution of the insolvent's estate must
be made by the trustee under the direction of the insol-
vent Court.

In concluding this opinion, it is but proper that we
should say a word or two in explanation of what fell
from one of the counsel in the argument of this case.
In the former appeal between these parties, the assign-
ment from Forster, Clark & Co. to Slingluff, trustee,
was declared to be fraudulent and void. We were sur-
prised to learn that certain expressions in the opinion
filed in that case had been construed as reflecting upon
Mr. Slingluff as being a party to the fraud. It does not
seem to us that the opinion is at all susceptible of this
construction, but, to avoid any misapprehension, we

deem it proper to say that such was not the intention of the Court. The fraud condemned was the fraud of the grantor, and we did not mean to insinuate, much less say, that Mr. Slingluff was, in our opinion, a party to the fraud.

*Judgment affirmed.*

(Decided 18th December, 1889.)