## HARRIS *v.* BALK.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CARO-
LINA.

No. 191.   Argued April 4, 1905.—Decided May 8, 1905.

A citizen of North Carolina who owed money to another citizen of that State, was, while temporarily in Maryland, garnisheed by a creditor of the man to whom he owed the money. Judgment was duly entered according to Maryland practice and paid. Thereafter the garnishee was sued in North Carolina by the original creditor and set up the garnishee judgment and payment, but the North Carolina courts held that as the situs of the debt was in North Carolina the Maryland judgment was not a bar and awarded judgment against him. *Held*, error and that:

As under the laws of Maryland the garnishee could have been sued by his creditor in the courts of that State he was subject to garnishee process if found and served in the State even though only there temporarily, no matter where the situs of the debt was originally.

Attachment is the creature of the local law, and power over the person of the garnishee confers jurisdiction on the courts of the State where the writ issues. A judgment against a garnishee, properly obtained according to the law of the State, and paid, must under the full faith and credit clause of the Federal Constitution, be recognized as a payment of the original debt, by the courts of another State, in an action brought against the garnishee by the original creditor.

Where there is absolutely no defense and the plaintiff is entitled to recover, there is no reason why the garnishee should not consent to a judgment impounding the debt, and his doing so does not amount to such a voluntary payment that he is not protected thereby under the full faith and credit clause of the Constitution.

While it ¿ ... obje. of the courts to prevent the payment of any debt

twice over, the failure on the part of the garnishee to give proper notice to his creditor, of the levying of the attachment, would be such neglect of duty to his creditor, as would prevent him from availing of the garnishee judgment as a bar to the suit of the creditor, and thus oblige him to pay the debt twice.

THE plaintiff in error brings the case here in order to review the judgment of the Supreme Court of North Carolina, affirming a judgment of a lower court against him for $180, with interest, as stated therein. The case has been several times before the Supreme Court of that State, and is reported in 122 N. Car. 64; again, 124 N. Car. 467; the opinion delivered at the time of entering the judgment now under review, is to be found in 130 N. Car. 381; see also 132 N. Car. 10.

The facts are as follows: The plaintiff in error, Harris, was a resident of North Carolina at the time of the commencement of this action in 1896, and prior to that time was indebted to the defendant in error, Balk, also a resident of North Carolina, in the sum of $180, for money borrowed from Balk by Harris during the year 1896, which Harris verbally promised to repay, but there was no written evidence of the obligation. During the year above mentioned one Jacob Epstein, a resident of Baltimore, in the State of Maryland, asserted that Balk was indebted to him in the sum of over $300. In August, 1896, Harris visited Baltimore for the purpose of purchasing merchandise, and while he was in that city temporarily on August 6, 1896, Epstein caused to be issued out of a proper court in Baltimore a foreign or non-resident writ of attachment against Balk, attaching the debt due Balk from Harris, which writ the sheriff at Baltimore laid in the hands of Harris, with a summons to appear in the court at a day named. With that attachment, a writ of summons and a short declaration against Balk (as provided by the Maryland statute), were also delivered to the sheriff and by him set up at the court house door, as required by the law of Maryland. Before the return day of the attachment writ Harris left Baltimore and returned to his home in North Carolina. He did not contest the garnishee

process, which was issued to garnish the debt which Harris owed Balk. After his return Harris made an affidavit on August 11, 1896, that he owed Balk $180, and stated that the amount had been attached by Epstein of Baltimore, and by his counsel in the Maryland proceeding Harris consented therein to an order of condemnation against him as such garnishee for $180, the amount of his debt to Balk. Judgment was thereafter entered against the garnishee and in favor of the plaintiff, Epstein, for $180. After the entry of the garnishee judgment, condemning the $180 in the hands of the garnishee, Harris paid the amount of the judgment to one Warren, an attorney of Epstein, residing in North Carolina. On August 11, 1896, Balk commenced an action against Harris before a justice of the peace in North Carolina, to recover the $180 which he averred Harris owed him. The plaintiff in error, by way of answer to the suit, pleaded in bar the recovery of the Maryland judgment and his payment thereof, and contended that it was conclusive against the defendant in error in this action, because that judgment was a valid judgment in Maryland, and was therefore entitled to full faith and credit in the courts of North Carolina. This contention was not allowed by the trial court, and judgment was accordingly entered against Harris for the amount of his indebtedness to Balk, and that judgment was affirmed by the Supreme Court of North Carolina. The ground of such judgment was that the Maryland court obtained no jurisdiction to attach or garnish the debt due from Harris to Balk, because Harris was but temporarily in the State, and the *situs* of the debt was in North Carolina.

*Mr. George W. S. Musgrave*, with whom *Mr. Sylvan Hayes Lauchheimer* was on the brief, for plaintiff in error:

Garnishee judgment was properly entered so far as practice in Maryland is concerned. *Cockey* v. *Leister*, 12 Maryland, 124; *Garner* v. *Garner*, 56 Maryland, 127; *Buschman* v. *Hanna*, 72 Maryland, 1, 5; Maryland Code, Art. IX, § 34.

As to the question of the *situs* of a debt, there has been much controversy and a great diversity of opinion, but the weight of authority is that the position taken by the Supreme Court of North Carolina was wrong.

A debt is something which (in the absence of some written evidence) exists only in contemplation of law. It is merely the right one person has to ask or demand of another a certain amount of money or other property; an incorporeal right, invisible, intangible and without substantive existence.

The *situs* of a debt for the purposes of garnishment is not only at the domicil of the debtor, but in any State in which the garnishee may be found, provided the municipal law of the State permits the debtor to be garnished, and provided the court acquires jurisdiction over the garnishee through his voluntary appearance, or by actual service of process upon him within the State. Minor on Conflict of Laws, § 125.

This is supported by a long line of cases, the most important of which are the following: *Chi., R. I. & Pac. R. R.* v. *Sturm,* 174 U. S. 710; *Tootle* v. *Coleman,* 107 Fed. Rep. 41; *Mooney* v. *Buford Mfg. Co.,* 72 Fed. Rep. 32; *Morgan* v. *Neville,* 74 Pa. St. 52; *Savin* v. *Bond,* 57 Maryland, 228; *Nat. Ins. Co.* v. *Chambers,* 53 N. J. Eq. 468; *Harvey* v. *Railroad,* 50 Minnesota, 405; *Wyeth* v. *Lang,* 127 Missouri, 242; *Lancashire Ins. Co.* v. *Corbetts,* 165 Illinois, 592; *Embree* v. *Hanna,* 5 Johns. 101; *C., B. & Q. Ry.* v. *Moore,* 31 Nebraska, 629; *Hull* v. *Blake,* 13 Massachusetts, 153; *Blake* v. *Williams,* 6 Pick. 286; *Harwell* v. *Sharp,* 85 Georgia, 124; *Neufelder* v. *Ins. Co.,* 6 Washington, 341; *Mooney* v. *Railroad Co.,* 60 Iowa, 346; *Howland* v. *Railroad Co.,* 134 Missouri, 474; *Railroad Co.* v. *Thompson,* 31 Kansas, 180; *Railroad Co.* v. *Crane,* 102 Illinois, 249; *Fithian* v. *Railroad Co.,* 31 Pa. St. 114; *Wabash* v. *Dougan,* 142 Illinois, 248; *Berry* v. *Davis,* 77 Texas, 191; *Nichols* v. *Hooper,* 61 Vermont, 295; *Samuel* v. *Agnew,* 80 Illinois, 553; *Richardson* v. *Lester,* 83 Illinois, 55; *B. & O. S. W. Ry.* v. *Adams,* 60 L. R. A. 396; *Campbell* v. *Home Ins. Co.,* 1 S. C. N. S. 158; *Glover* v. *Wells,* 40 Ill. App. 350; *Roche* v. *Ins. Co.,* 2 Ill. App.

360; *Moore* v. *C., R. I. & P. Ry.*, 43 Iowa, 385; *Cochran* v. *Fitch*, 1 Sandf. Ch. 142; *Mahany* v. *Kephart*, 15 W. Va. 609; *Holland* v. *M. & O. Ry.*, 84 Tennessee, 414; *Pomeroy* v. *Rand, McNally & Co.*, 157 Illinois, 176; *Cole* v. *Flitcraft*, 47 Maryland, 312; *Bank* v. *Merchants' Bank*, 7 Gill (Md.), 415; *Brengle* v. *McClellan*, 7 G. & J. (Md.) 434; *Newland* v. *Reilly*, 85 Michigan, 151; *Felt Mill* v. *Blanding*, 17 R. I. 297; *Cohoon* v. *Morgan*, 38 Vermont, 236; Black on Judgments, §§ 593, 857, 859, 923; Rood on Garnishment, §§ 242, 245.

*Mr. John H. Small* for defendant in error:

The Maryland court, in the garnishment proceeding of *Epstein* v. *Balk* and Harris, garnishee, was without jurisdiction, and the judgment can be collaterally attacked in the courts of North Carolina.

The jurisdiction of the Maryland court may be attacked in this action, even to the extent of contradicting the recital contained in the record. *Thompson* v. *Whitman*, 18 Wall. 457; *Knowles* v. *Gaslight & Coke Co.*, 19 Wall. 58; *Kilbourn* v. *Thompson*, 103 U. S. 198; *Noble* v. *Union River Logging Co.*, 147 U. S. 173; 1 Greenleaf on Evidence (Lewis edition), § 548. If Balk had no property in that State the Maryland court was without jurisdiction. *Pennoyer* v. *Neff*, 95 U. S. 714.

Facts essential to establish the jurisdiction of the State court must appear affirmatively by allegation or affidavit before the process of the court can issue authorizing the attachment or garnishment of the *res*.

While the debtor (the defendant) and the garnishee are both non-residents, no garnishment process can issue against such non-resident temporarily in the State at the instance of a plaintiff domiciled in the State. A non-resident cannot be held as garnishee. Rood on Garnishment, p. 21, note 5, § 15.

One who is only temporarily in a State and in which he does not reside cannot be subjected to garnishment. Waples on Attachment and Garnishment, 227; Drake on Attachment, 5th ed., § 474; *Everett* v. *Conn. &c. Co.*, 4 Colo. App. 513.

Where personal jurisdiction cannot be acquired over the defendant on account of his being a non-resident the plaintiff cannot garnishee a non-resident while temporarily within the State.   14 Am. & Eng. Ency. Law, 2d ed., 803, note 2; and· as to custom of London, see p. 815, note 2; *Peters* v. *Rogers,* 5 Mason, 555.

A state court cannot issue garnishment process against a non-resident temporarily in the State, and if such process is issued the court is without jurisdiction unless it is made to appear that he has in his possession tangible property of the defendant or is bound to pay the defendant money or deliver him property within the State.   *Penna. R. R. Co.* v. *Rogers,* 52 W. Va. 250; *S. C.,* 62 L. R. A. 178, and notes p. 182–187.

That the garnishee is a non-resident and only temporarily within the State is a jurisdictional question and not personal to the garnishee.   Shinn on Attachment and Garnishment, 860, § 491; *Rindge* v. *Green,* 52 Vermont, 204.   So as to service of summons.   *Goldey* v. *Morning News,* 156 U. S. 518.

As to effect of collusive and voluntary payment by garnishee see *Baldwin* v. *Gt. Nor. Ry. Co.,* 51 L. R. A. 640; *S. C.,* 64 L. R. A. 625.   Garnishment statutes are strictly construed as against the party resorting· to the remedy.   *State Bank* v. *Hinton,* 1 Dev. Law (12 N. C.), 397.   A garnishee who has paid under an invalid judgment cannot plead the same in bar. *Merriam* v. *Rundlett,* 13 Pick. (Mass.) 511; Rood on Garnishment, § 208.

The Maryland court could not garnishee a non-resident temporarily within the State.   See act of legislature of Maryland, 1868, ch. 471, § 211, under which a citizen of Maryland cannot sue a non-resident and garnishee a foreign corporation doing business in Maryland when the cause of action or contract of insurance was not consummated in Maryland.   *Myer* v. *Insurance Co.,* 40 Maryland, 595; *Cromwell* v. *Insurance Co.,* 49 Maryland, 366.   *Chicago &c. Ry.* v. *Sturm,* 174 U. S. 710, does not apply.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The state court of North Carolina has refused to give any effect in this action to the Maryland judgment; and the Federal question is, whether it did not thereby refuse the full faith and credit to such judgment which is required by the Federal Constitution. If the Maryland court had jurisdiction to award it, the judgment is valid and entitled to the same full faith and credit in North Carolina that it has in Maryland as a valid domestic judgment.

The defendant in error contends that the Maryland court obtained no jurisdiction to award the judgment of condemnation, because the garnishee, although at the time in the State of Maryland, and personally served with process therein, was a non-resident of that State, only casually or temporarily within its boundaries; that the *situs* of the debt due from Harris, the garnishee, to the defendant in error herein was in North Carolina, and did not accompany Harris to Maryland; that, consequently, Harris, though within the State of Maryland, had not possession of any property of Balk, and the Maryland state court therefore obtained no jurisdiction over any property of Balk in the attachment proceedings, and the consent of Harris to the entry of the judgment was immaterial. The plaintiff in error, on the contrary, insists that, though the garnishee were but temporarily in Maryland, yet the laws of that State provide for an attachment of this nature, if the debtor, the garnishee, is found in the State and the court obtains jurisdiction over him by the service of process therein; that the judgment, condemning the debt from Harris to Balk, was a valid judgment, provided Balk could himself have sued Harris for the debt in Maryland. This, it is asserted, he could have done, and the judgment was therefore entitled to full faith and credit in the courts of North Carolina.

The cases holding that the state court obtains no jurisdiction over the garnishee if he be but temporarily within the State,

proceed upon the theory that the *situs* of the debt is at the domicil either of the creditor or of the debtor, and that it does not follow the debtor in his casual or temporary journey into another State, and the garnishee has no possession of any property or credit of the principal debtor in the foreign State.

We regard the contention of the plaintiff in error as the correct one. The authorities in the various state courts upon this question are not at all in harmony. They have been collected by counsel, and will be found in their respective briefs, and it is not necessary to here enlarge upon them.

Attachment is the creature of the local law; that is, unless there is a law of the State providing for and permitting the attachment it cannot be levied there. If there be a law of the State providing for the attachment of the debt, then if the garnishee be found in that State, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff and condemn it, provided the garnishee could himself be sued by his creditor in that State. We do not see how the question of jurisdiction *vel non* can properly be made to depend upon the so-called original *situs* of the debt, or upon the character of the stay of the garnishee, whether temporary or permanent, in the State where the attachment is issued. Power over the person of the garnishee confers jurisdiction on the courts of the State where the writ issues. *Blackstone* v. *Miller*, 188 U. S. 189, 206. If, while temporarily there, his creditor might sue him there and recover the debt, then he is liable to process of garnishment, no matter where the *situs* of the debt was originally. We do not see the materiality of the expression "*situs* of the debt," when used in connection with attachment proceedings. If by *situs* is meant the place of the creation of the debt, that fact is immaterial. If it be meant that the obligation to pay the debt can only be enforced at the *situs* thus fixed, we think it plainly untrue. The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes. He is as

much bound to pay his debt in a foreign State when therein sued upon his obligation by his creditor, as he was in the State where the debt was contracted. We speak of ordinary debts, such as the one in this case. It would be no defense to such suit for the debtor to plead that he was only in the foreign State casually or temporarily. His obligation to pay would be the same whether he was there in that way or with an intention to remain. It is nothing but the obligation to pay which is garnished or attached. This obligation can be enforced by the courts of the foreign State after personal service of process therein, just as well as by the courts of the domicil of the debtor. If the debtor leave the foreign State without appearing, a judgment by default may be entered, upon which execution may issue, or the judgment may be sued upon in any other State where the debtor might be found. In such case the *situs* is unimportant. It is not a question of possession in the foreign State, for possession cannot be taken of a debt or of the obligation to pay it, as tangible property might be taken possession of. Notice to the debtor (garnishee) of the commencement of the suit, and notice not to pay to his creditor, is all that can be given, whether the garnishee be a mere casual and temporary comer, or a resident of the State where the attachment is laid. His obligation to pay to his creditor is thereby arrested and a lien created upon the debt itself. *Cahoon* v. *Morgan*, 38 Vermont, 234, 236; *National Fire Ins. Co.* v. *Chambers*, 53 N. J. Eq. 468, 483. We can see no reason why the attachment could not be thus laid, provided the creditor of the garnishee could himself sue in that State and its laws permitted the attachment.

There can be no doubt that Balk, as a citizen of the State of North Carolina, had the right to sue Harris in Maryland to recover the debt which Harris owed him. Being a citizen of North Carolina, he was entitled to all the privileges and immunities of citizens of the several States, one of which is the right to institute actions in the courts of another State. The law of Maryland provides for the attachment of credits in a

case like this. See sections 8 and 10 of Article 9 of the Code of Public General Laws of Maryland, which provide that, upon the proper facts being shown (as stated in the article), the attachment may be sued out against lands, tenements, goods and credits of the debtor. Section 10 particularly provides that "Any kind of property or *credits* belonging to the defendant, in the plaintiff's own hands, or in the hands of any one else, may be attached; and credits may be attached which shall not then be due." Sections 11, 12 and 13 of the above-mentioned article provide the general practice for levying the attachment and the proceedings subsequent thereto. Where money or credits are attached the inchoate lien attaches, to the fund or credits when the attachment is laid in the hands of the garnishee, and the judgment condemning the amount in his hands becomes a personal judgment against him. *Buschman* v. *Hanna*, 72 Maryland, 1, 5, 6. Section 34 of the same Maryland Code provides also that this judgment of condemnation against the garnishee, or payment by him of such judgment, is pleadable in bar to an action brought against him by the defendant in the attachment suit for or concerning the property or credits so condemned.

It thus appears that Balk could have sued Harris in Maryland to recover his debt, notwithstanding the temporary character of Harris' stay there; it also appears that the municipal law of Maryland permits the debtor of the principal debtor to be garnished, and therefore if the court of the State where the garnishee is found obtains jurisdiction over him, through the service of process upon him within the State, then the judgment entered is a valid judgment. See Minor on Conflict of Laws, section 125, where the various theories regarding the subject are stated and many of the authorities cited. He there cites many cases to prove the correctness of the theory of the validity of the judgment where the municipal law permits the debtor to be garnished, although his being within the State is but temporary. See pp. 289, 290. This is the doctrine which is also adopted in *Morgan* v. *Neville*, 74 Pa. St. 52, by the

Supreme Court of Pennsylvania, per Agnew, J., in delivering the opinion of that court. The same principle is held in *Wyeth Hardware &c. Co.* v. *Lang*, 127 Missouri, 242, 247; in *Lancashire Insurance Co.* v. *Corbetts*, 165 Illinois, 592; and in *Harvey* v. *Great Northern Ry. Co.*, 50 Minnesota, 405, 406, 407; and to the same effect is *Embree* v. *Hanna*, 5 Johns. (N. Y.) 101; also *Savin* v. *Bond*, 57 Maryland, 228, where the court held that the attachment was properly served upon a party in the District of Columbia while he was temporarily there; that as his debt to the appellant was payable wherever he was found, and process had been served upon him in the District of Columbia, the Supreme Court of the District had unquestioned jurisdiction to render judgment, and the same having been paid, there was no error in granting the prayer of the appellee that such judgment was conclusive. The case in 138 N. Y. 209, *Douglass* v. *Insurance Co.*, is not contrary to this doctrine. The question there was not as to the temporary character of the presence of the garnishee in the State of Massachusetts, but, as the garnishee was a foreign corporation, it was held that it was not within the State of Massachusetts so as to be liable to attachment by the service upon an agent of the company within that State. The general principle laid down in *Embree* v. *Hanna*, 5 Johns. (N. Y.) 101, was recognized as correct. There are, as we have said, authorities to the contrary, and they cannot be reconciled.

It seems to us, however, that the principle decided in *Chicago, R. I. &c. Ry. Co.* v. *Sturm*, 174 U. S. 710, recognizes the jurisdiction, although in that case it appears that the presence of the garnishee was not merely a temporary one in the State where the process was served. In that case it was said: " 'All debts are payable everywhere, unless there be some special limitation or provision in respect to the payment; the rule being that debts as such have no *locus* or *situs*, but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere.' 2 Parsons on Contracts, 8th ed., 702 (9th ed., 739). The debt involved in the pending

case had no 'special limitation or provision in respect to pay-
ment.' It was payable generally, *and could have been sued
on in Iowa, and therefore was attachable in Iowa.* This is the
principle and effect of the best considered cases—the inevitable
effect from the nature of transitory actions and the purpose of
foreign attachment laws if we would enforce that purpose."
The case recognizes the right of the creditor to sue in the State
where the debtor may be found, even if but temporarily there,
and upon that right is built the further right of the creditor
to attach the debt owing by the garnishee to his creditor. The
importance of the fact of the right of the original creditor to
sue his debtor in the foreign State, as affecting the right of the
creditor of that creditor to sue the debtor or garnishee, lies in
the nature of the attachment proceeding. The plaintiff, in
such proceeding in the foreign State is able to sue out the at-
tachment and attach the debt due from the garnishee to his
(the garnishee's) creditor, because of the fact that the plaintiff
is really in such proceeding a representative of the creditor of
the garnishee, and therefore if such creditor himself had the
right to commence suit to recover the debt in the foreign
State his representative has the same right, as representing
him, and may garnish or attach the debt, provided the mu-
nicipal law of the State where the attachment was sued out
permits it.

It seems to us, therefore, that the judgment against Harris
in Maryland, condemning the $180 which he owed to Balk,
was a valid judgment, because the court had jurisdiction over
the garnishee by personal service of process within the State
of Maryland.

It ought to be and it is the object of courts to prevent the
payment of any debt twice over. Thus, if Harris owing a debt
to Balk, paid it under a valid judgment against him, to Epstein,
he certainly ought not to be compelled to pay it a second time,
but should have the right to plead his payment under the
Maryland judgment. It is objected, however, that the pay-
ment by Harris to Epstein was not under legal compulsion.

Harris in truth owed the debt to Balk, which was attached by Epstein. He had, therefore, as we have seen, no defense to set up against the attachment of the debt. Jurisdiction over him personally had been obtained by the Maryland court. As he was absolutely without defense, there was no reason why he should not consent to a judgment impounding the debt, which judgment the plaintiff was legally entitled to, and which he could not prevent. There was no merely voluntary payment within the meaning of that phrase as applicable here.

But most rights may be lost by negligence, and if the garnishee were guilty of negligence in the attachment proceeding, to the damage of Balk, he ought not to be permitted to set up the judgment as a defense. Thus it is recognized as the duty of the garnishee to give notice to his own creditor, if he would protect himself, so that the creditor may have the opportunity to defend himself against the claim of the person suing out the attachment. This duty is affirmed in the case above cited of *Morgan* v. *Neville,* 74 Pa. St. 52, and is spoken of in *Railroad Co.* v. *Sturm, supra,* although it is not therein actually decided to be necessary, because in that case notice was given and defense made. While the want of notification by the garnishee to his own creditor may have no effect upon the validity of the judgment against the garnishee (the proper publication being made by the plaintiff), we think it has and ought to have an effect upon the right of the garnishee to avail himself of the prior judgment and his payment thereunder. This notification by the garnishee is for the purpose of making sure that his creditor shall have an opportunity to defend the claim made against him in the attachment suit. Fair dealing requires this at the hands of the garnishee. In this case, while neither the defendant nor the garnishee appeared, the court, while condemning the credits attached, could not, by the terms of the Maryland statute, issue the writ of execution unless the plaintiff gave bond or sufficient security before the court awarding the execution, to make restitution of the money paid if the defendant should, at any time within a year and a day,

appear in the action and show that. the plaintiff's claim, or some part thereof, was not due to the plaintiff. The defendant in error, Balk, had notice of this attachment, certainly within a few days after the issuing thereof and the entry of judgment thereon, because he sued the plaintiff in error to recover his debt within a few days after his (Harris') return to North Carolina, in which suit the judgment in Maryland was set up by Harris as a plea in bar to Balk's claim. Balk, therefore, had an opportunity for a year and a day after the entry of the judgment to litigate the question of his liability in the Maryland court and to show that he did not owe the debt, or some part of it, as was claimed by Epstein. He, however, took no proceedings to that end, so far as the record shows, and the reason may be supposed to be that he could not successfully defend the claim, because he admitted in this case that he did, at the time of the attachment proceeding, owe Epstein some $344.

Generally, though, the failure on the part of the garnishee to give proper notice to his creditor of the levying of the attachment would be such a neglect of duty on the part of the garnishee which he owed to his creditor as would prevent his availing himself of the judgment in the attachment suit as a bar to the suit of his creditor against himself, which might therefore result in his being called upon to pay the debt twice.

The judgment of the Supreme Court of North Carolina must be reversed and the cause remanded for further proceedings not inconsistent with the opinion of this court.

*Reversed.*

MR. JUSTICE HARLAN and MR. JUSTICE DAY dissented.