**In re WORLD OF ENGLISH, N.V., Debtor.**

**In re COMMUNICATION & STUDIES INTERNATIONAL, LTD., Debtor.**

**Bankruptcy Nos. 81–02822A, 81–02823A.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Jan. 27, 1982.

Jesse H. Austin, III, Robert W. Patrick, Jeffrey L. Raney, Karen Wildau, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for petitioners.

David G. Bisbee, Robert A. Parker, Bisbee & Parker, Dale M. Schwartz, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for respondent.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On July 7, 1981, the above-referenced debtors filed their Chapter 11 petitions. On August 27, 1981, Bank of America, N.T. & S.A. (hereinafter "BOA") filed its motion to dismiss these debtors' petitions alleging that the requirements of 11 U.S.C. § 109 and 11 U.S.C. § 1112(b) have not been met in that these debtors have not "maintained an office, transacted business or had property within this district for 180 days preceding" the filing of their petitions and that these petitions have not been filed in good faith.

Section 109 of the Bankruptcy Code sets forth the requirements for a person to be a debtor under Chapter 11 of the United States Code, Title 11. One of these requirements, which are set forth in the disjunctive, is that said "person," the definition which includes a corporation (11 U.S.C. § 101(30)), has property in the United States. Both World of English, N.V. (hereinafter "WOE") and Communication & Studies International, Ltd. (hereinafter "C&S") allege that they have property in the United States.

WOE asserts that the Japanese consumer installment contracts arising from the sale of Disney's World of English Product which are in BOA's possession and are physically located at BOA's offices in Los Angeles, California, constitute some of the property which it has in the United States. C&S asserts that its Japanese consumer installment contracts arising from the sale of Actual Living English membership programs which are in BOA's possession and are physically located at BOA's offices in Los Angeles, California, constitute some of the property which it has in the United States. The debtors have also shown that proceeds from the above-mentioned Japanese consumer installment contracts are

currently in the United States in the form of certificates of deposit and bank accounts in the United States (Black Deposition of November 27, 1981 at 17–18, 32–33, 42).

BOA has presented a very persuasive argument to the effect that the situs of the property on which the debtors base the jurisdiction of this Court is the domicile of the owner of said property, said domicile in this instance being the Bahamas and the Netherlands Antilles for C&S and WOE respectively. It follows that if the debtors' property is deemed to be located at their respective domiciles, then this Court does not have jurisdiction based on there being property in the United States, and therefore, BOA's motion to dismiss should be granted.

BOA has correctly shown that the situs of an account receivable is the location of the account debtor. *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); *In the Matter of W&G Development, A.G.*, 3 BCD 655 (Bkrtcy.S.D.N.Y.1977). In *W&G Development*, the Court based its jurisdiction on the fact that the account debtor on certain accounts receivable of the bankruptcy debtor was a New York corporation or its United States affiliate, and thus that the bankruptcy debtor, a Swiss corporation, had property in the United States. In the instant case, the fact that certain Japanese consumer installment receivables are being held by BOA in the United States is not a basis of jurisdiction because the situs of this property is in Japan, with the account debtor. On the other hand, applying the New York Court's reasoning in *W&G Development*, it is this Court's belief that the location of the debtors' bank accounts and certificates of deposit within the United States does constitute a basis for jurisdiction. BOA argues that the situs of the accounts that C&S and WOE claim are located in Los Angeles, California, "are deposit accounts having their situs at C&S' and WOE's principal place of business." *United States v. Webster*, 208 F.Supp. 412 (S.D.N.Y.1962) [BOA's Reply Brief to the Debtors' Supplemental Brief in Opposition to Motion to Dismiss at p. 5]. *Webster* was a tax lien

case in which the Court held that for lien filing purposes, a bank account is within the general rule that personal property's situs is the domicile of its owner. *Webster* at 415.

The holding in *Webster* was the only practical finding possible in light of the nature and purpose of a lien filing, which results in a rational system of priority. However, in a bankruptcy context, courts have held that property in the form of deposit accounts in United States banks comprises a basis for jurisdiction, even where the debtor has its principal place of business and assets *outside* the United States. *In the Matter of Israel-British Bank (London), Ltd.*, 1 BCD 528, 529 (Bkrtcy.S.D.N.Y.1974); *aff'd, In the Matter of Israel-British Bank (London), Ltd.*, 2 BCD 730, 732, 536 F.2d 509, 512 (2nd Cir. 1976).

Therefore, in applying the analysis contained in *W&G Development, supra*, this Court concludes that the banks that hold WOE and C&S accounts are account debtors of C&S and WOE, and that therefore the situs of these accounts is in the United States. The fact that these accounts, comprised of proceeds from the collection of Japanese consumer receivables, are in the United States only because of the May 1, 1981 and May 8, 1981 Orders of this Court does not affect the fact that these proceeds are in the United States; and because they are, they may serve as the basis for jurisdiction.

28 U.S.C. § 1472 discusses *venue* of cases under title 11. Subsection (2) of this provision states that a case under title 11 may be commenced in the Bankruptcy Court for a district

"(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership." 11 U.S.C. § 101(2) defines affiliate to mean a

"(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, ..."

Both WOE and C&S are 100 percent owned subsidiaries of International Horizons, Inc., which is currently a debtor properly before this Court. Therefore, venue is proper in the Northern District of Georgia despite the fact that the property of WOE and C&S is not located in this district.

BOA's second contention by which they argue that the above-referenced debtors' Chapter 11 proceedings should be dismissed is that the instant petitions have not been filed in good faith. See *In re Dutch Flat Investment Co.*, 3 CBC 2d 136 (Bkrtcy.N.D. Cal.1980); *In re Victory Construction Co., Inc.*, 3 CBC 2d 655 (Bkrtcy.C.D.Cal.1981). Specifically, BOA alleges that payments made to unsecured creditors of WOE and C&S since the filing of their petitions, coupled with the fact that the debtors have listed no unsecured creditors in their schedules, constitutes evidence of lack of good faith in the filing of their petitions.

BOA has alleged that certain payments to unsecured creditors of WOE and C&S are preferences; that these payments were part of a scheme to prefer Japanese creditors over BOA; and that the debtors took unfair advantage of the supplemental stay. The debtors' reliance on the case of *In re Israel-British Bank, Ltd. (Tel Aviv)*, 2 BCD 1067 (S.D.N.Y.1976) in support of their argument that a lack of good faith is not evidenced by payment in full to foreign creditors where domestic creditors have not yet received a distribution is, as BOA has shown, misplaced. *Israel-British Bank* is not on point because in that case payments to foreign creditors were not by the debtors but by the Bank of Israel, and thus a claim of there being a preferential transfer was not at issue.

■ There is nothing inherently malevolent about a preference. The courts in distinguishing between a preference which is *malum prohibitum* and a fraudulent conveyance which is *malum per se* have stated that:

"There is a clear and broad distinction between a preferential transfer and a fraudulent transfer. The latter involves moral turpitude, the former does not."

*Rutter v. GMAC*, 70 F.2d 479, 481 (10th Cir. 1934).

"The other (a preference) is innocent and valid, except when made in violation of the express provisions of a statute." *Van Iderstine, Trustee in Bankruptcy of Fellerman v. National Discount Company*, 227 U.S. 575, 582, 33 S.Ct. 343, 344, 57 L.Ed. 652 (1913).

The debtors in the case *sub judice* cannot be said to have acted in bad faith by doing what the law allows them to do.

■ BOA has also argued that the unsecured creditors to which the above-referenced payments have been made are outside the jurisdictional reach of this Court, and that therefore there can be no enforcement in Japan of any preference or fraudulent transfer decision rendered by this Court. *Fotochrome, Inc. v. Copal Co., Ltd.*, 517 F.2d 512 (2nd Cir. 1975). In support of this position, BOA has submitted the statement of Mr. Kazuhiko Niwa of Yuasa and Hara, BOA's counsel located in Tokyo, Japan. See Exhibit E to BOA's Supplemental Brief in Support of Motion to Dismiss. Mr. Niwa's telex indicates that if the payments at issue "were made in Japan to Japanese creditors, the claims for such payments are deemed to have existed in Japan." It therefore appears that a determination by this Court that under title 11 of the United States Code a preferential transfer has been made will not be binding in Japan.

■ The danger that an order of this Court may not be enforceable in a foreign country is one of the major problems which arises in legal proceedings dealing with multi-national corporations. However, the inability to domesticate an order of this Court in Japan does not indicate a lack of good faith on the part of the debtors in filing their Chapter 11 petitions. BOA would be under the same disability if this case had not been filed in this Court in that they would have to proceed in a Japanese court with regard to economic activity which has taken place solely in Japan.

BOA's final allegation concerning lack of good faith on the part of the debtors in the

filing of their reorganization petitions is that there are no unsecured creditors listed for said petitioners. BOA cites the cases of *In re Dutch Flat Investment Company, supra,* and *In re Groundhog Mountain Corporation,* 1 BCD 923 (Bkrtcy.S.D.N.Y.1975) in support of this contention. Though there was only one major secured creditor in the *Dutch Flat* case and a *de minimis* unsecured creditor, the case was not decided on the basis of the absence of material unsecured creditors. In *In re Dutch Flat,* the debtor corporation was formed on May 22, 1980 and filed its petition on May 27, 1980. The Court found that this corporation was organized specifically to avoid the exercise by a secured creditor of its rights and that the parent corporation and its assets were intended to be kept beyond the Court's jurisdiction. Dutch Flat Investment Company did not have any assets other than its equity in the subject property; it conducted no business; and it had no employees. Thus, the Court in the exercise of its equity powers dismissed said case to prevent the abuse of the jurisdiction of the Bankruptcy Court and the misuse of the remedy provided under the Bankruptcy Code.

In *In re Groundhog Mountain Corporation, supra,* the debtor's only asset was a Virginia property which was subject to a $4 million deed to secure debt. The Court in that case found that the debtor filed solely to obtain the benefit of the automatic stay and not to seek an accord with creditors, and thus the Court found cause to lift the automatic stay.

However, neither *In re Dutch Flat Investment Company* nor *In re Groundhog Mountain Corporation* are on point in our consideration of this case. C&S was formed in 1969 and WOE in 1978. Neither corporation was formed solely for the purpose of shifting assets from one entity to a second entity to enable the second entity to avail itself of the protection of the Bankruptcy Court. The parent corporation, International Horizons, Inc., has submitted itself to the jurisdiction of this Court. Additionally, C&S and WOE are ongoing businesses which have employees.

This Court does not believe that the lack of unsecured creditors is conclusive as to the existence of good faith. It is appropriate in the case *sub judice* to find that, due to the unique symbiotic relationship which exists between the parent corporation, International Horizons, Inc., its affiliates and subsidiaries, the unsecured creditors of International Horizons, Inc. are the unsecured creditors of both C&S and WOE. (See Exhibit R to the Debtors' Consolidated Disclosure Statement).

BOA has presented a substantial argument that a Court should safeguard its jurisdictional integrity by dismissing a case where it finds that there has been abuse of the provisions of the Bankruptcy Code. However, this Court believes that it is better able to protect its jurisdictional integrity in situations in which debtors are before it, and further believes that the debtors' actions in the instant case do not warrant dismissal. In the case under consideration, the interrelationship of the debtors and their affiliates indicates the need for joint administration, where possible. Fragmentation of these proceedings would result from the Court's affording its protection to only *some* of the entities which comprise the debtors and their affiliates. None of the entities and parties involved here would benefit from such fragmentation. See Order of January 6, 1981.

Therefore, for the above-stated reasons, BOA's motion to dismiss the Chapter 11 proceedings of WOE and C&S is denied.

IT IS SO ORDERED.