**WELLS FARGO ASIA LIMITED,**
Plaintiff–Appellee,

v.

**CITIBANK, N.A., Defendant–Appellant.**

**No. 652, Docket 87–7685.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 18, 1988.

Final Briefs Submitted June 14, 1988.

Decided July 18, 1988.

**658**

Darryl Snider, San Francisco, Cal. (Duncan E. Haynes, Thomas M. Peterson, Jessica M. Hoover, Brobeck, Phleger & Harrison, San Francisco, Cal., Edwin E. McAmis, Skadden, Arps, Slate, Meagher & Flom, New York City, on the brief), for plaintiff-appellee.

John E. Hoffman, Jr., New York City (John J. Roche, Henry Weisburg, Jennifer Freeman, Rachel E. Deming, Melissa A. Samet, David Ledecky, Shearman & Sterling, New York City, Antonio V. Agcaoili, Agcaoili & Associates, Manila, Philippines, on the brief), for defendant-appellant.

John L. Warden, New York City (Michael Straus, Sullivan & Cromwell, New York City, Norman R. Nelson, Lawrence R. Uhlick, on the brief), for The New York Clearing House Ass'n and the Institute of Intern. Bankers as amici curiae urging reversal.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C. (John R. Bolton, Asst. Atty. Gen., James J. Spears, Deputy Asst. Atty. Gen., Anthony J. Steinmeyer, Jay S. Bybee, Civil Div. of the Dept. of Justice; Abraham D. Sofaer, Legal Advisor, Dept. of State; Mark Sullivan III, General Counsel, D. Edward Wilson, Jr., Acting General Counsel, Dept. of the Treasury; Michael Bradfield, General Counsel, Ricki Rhodarmer Tigert, Asst. General Counsel, Board of Governors of the Federal Reserve System; John L. Douglas, General Counsel, Federal Deposit Ins. Corp., Robert B. Serino, Deputy Chief Counsel, Office of the Comptroller of the Currency, all of counsel), filed briefs for the U.S. as amicus curiae urging reversal.

Before TIMBERS, KEARSE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Citibank, N.A. ("Citibank"), appeals from a final judgment entered in the United States District Court for the Southern District of New York after a bench trial before Whitman Knapp, *Judge*, awarding plaintiff Wells Fargo Asia Limited ("WFAL") $1,066,000 as the balance due on certain time deposits carried by Citibank's branch in Manila, Philippines ("Citibank/Manila"). *See* 660 F.Supp. 946 (1987) ("1987 Opinion"). Citibank contends that judgment should have been entered in its favor because the obligation to repay the deposits was suspended by a decree of the Philippine government. For the reasons below, we affirm the judgment.

## BACKGROUND

The pertinent facts, as found by the district court in a Memorandum and Order dated April 22, 1988 ("1988 Opinion"), and a Memorandum and Order published at 612 F.Supp. 351 (1985), and adopted in the 1987 Opinion, 660 F.Supp. at 947, are as follows. On June 10, 1983, WFAL, a Singapore-chartered bank wholly owned by the United States-chartered Wells Fargo Bank, N.A., placed two six-month, nonnegotiable U.S. $1,000,000 deposits with Citibank/Manila. The placements were initially arranged orally by the parties' traders with the assistance of an Asian money broker, Astley & Pearce ("Astley"). Astley's report to the parties stated, *inter alia:*

Pay: Citibank, N.A. New York Account Manila

Repay: Wells Fargo International, New York Account Wells Fargo Asia Ltd., Singapore Account # 003-023645

Astley sent WFAL a telex containing the following "[i]nstructions":

Settlement—Citibank NA NYC AC Manila

Repayment—Wells Fargo Bk Intl NYC Ac Wells Fargo Asia Ltd Sgp No 003-023645

Thereafter, the parties exchanged written confirmations with respect to each deposit. WFAL's confirmation slips to Citibank stated:

We shall instruct Wells Fargo Bk Int'l New York our correspondent please pay to our a/c with Wells Fargo Bk Int'l New York to pay to Citibank NA customer's correspondent USD 1,000,000.

The telexes from Citibank/Manila to WFAL stated:

Please remit US Dlr 1,000,000 to our account with Citibank New York. At maturity we remit US Dlr 1,049,444.44 to your account with Wells Fargo Bank Intl Corp NY through Citibank New York.

The deposits were to mature on December 9 and 10, 1983. On October 15, 1983, the Philippine government issued a Memorandum to Authorized Agent Banks ("MAAB 47") which provided in part as follows:

Any remittance of foreign exchange for repayment of principal on all foreign obligations due to foreign banks and/or financial institutions, irrespective of maturity, shall be submitted to the Central Bank [of the Philippines] thru the Management of External Debt and Investment Accounts Department (MEDIAD) for prior approval.

As interpreted by the Central Bank of the Philippines, this decree prevented Citibank/Manila, an "authorized agent bank" under Philippine law, from repaying the WFAL deposits with its Philippine assets, i.e., those assets not either deposited in banks elsewhere or invested in non-Philippine enterprises. Citibank/Manila did not repay WFAL's deposits upon maturity.

WFAL commenced the present action on February 10, 1984. Thereafter, Citibank/Manila sought and received from the Central Bank of the Philippines permission to repay its foreign depositors to the extent it could do so with non-Philippine assets. Accordingly, Citibank/Manila paid WFAL $934,000. The remainder of the $2,000,000 deposited, i.e., $1,066,000, remained in dispute.

In its 1987 Opinion, the district court, "accept[ing] plaintiff's invitation to assume that Philippine law governs this action," ruled that "under Philippine law, Citibank's worldwide assets are available for satisfaction of plaintiff's claim." 660 F.Supp. 947, 950. Judgment was entered in favor of WFAL, and this appeal followed.

In an order dated March 25, 1988, this Court made a limited remand to the district court for clarification of the basis of the judgment. We asked the court to make a finding as to, *inter alia*, "[w]hether the parties agreed as to where the debt could be repaid, including whether they agreed that the deposits were collectible only in Manila." Accordingly, in its 1988 Opinion, the district court made supplemental findings of fact and conclusions of law. The court found that the parties "agree[d] that repayment was to occur in New York." *Id.* at 6. Interpreting collectibility to be different from repayability (stating that "[r]epayment refers to the location where the wire transfers effectuating repayment at maturity were to occur," while "[c]ollection refers to the place or places where plaintiff was entitled to look for satisfaction of its deposits in the event that Citibank should fail to make the required wire transfers at the place of repayment" (*id.* at 4)), the court concluded that the parties had reached no agreement as to where the debt was collectible. Responding to the other questions posed in our March 25 order, the district court ruled that New York law, rather than Philippine law, governed the dispute; that under New York law, Citibank's worldwide assets were available for satisfaction of WFAL's claim; and that apparently no provision of Philippine law precluded an agreement between the parties to make the deposits collectible outside of

Manila. The court thus reaffirmed the judgment in favor of WFAL.

The parties and the United States as amicus curiae have filed supplemental briefs addressing the district court's 1988 Opinion. In light of the district court's supplemental findings of fact and conclusions of law, we affirm the judgment.

## DISCUSSION

■ In general, a creditor may collect or enforce a debt wherever he can obtain jurisdiction over the debtor. *Harris v. Balk*, 198 U.S. 215, 222–23, 225, 25 S.Ct. 625, 626–27, 627, 49 L.Ed. 1023 (1905). " ' "All debts are payable everywhere, unless there be some special limitation or provision in respect to the payment; the rule being that debts as such have no *locus* or *situs*, but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere." ' " *Id.* at 225, 25 S.Ct. at 628 (quoting *Chicago, Rock Island & Pacific Ry. v. Sturm*, 174 U.S. 710, 716–17, 19 S.Ct. 797, 800, 43 L.Ed. 1144 (1899) (quoting 2 *Parsons on Contracts* 702 (8th ed.))).

■ A special limitation has traditionally been recognized under general banking law principles. Thus, " '[t]he situs of a bank's debt on a deposit is considered to be at the branch where the deposit is carried ....' " *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 862 (2d Cir.1981) (certificate of deposit) (quoting Heininger, *Liability of U.S. Banks for Deposits Placed in Their Foreign Branches*, 11 Law & Pol. Int'l Bus. 903, 975 (1979)), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *United States v. Guaranty Trust Co.*, 100 F.2d 369, 371 (2d Cir.1938) (deposit not evidenced by certificate); *Zimmermann v. Miller*, 2 F.2d 629, 631 (S.D.N.Y. 1924) (same), *rev'd on other grounds*, 7 F.2d 443 (2d Cir.1925), *aff'd*, 274 U.S. 253, 47 S.Ct. 625, 71 L.Ed. 1034 (1927). The consequence of this limitation is that a debt on a deposit normally authorizes a demand for the money only at the relevant branch.

This normal limitation on the situs of a banking debt is, however, subject to variation by agreement of the parties. If the parties agree that repayment of a deposit in a foreign bank or branch may occur at another location, they authorize demand and collection at that other location. *See Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521–22 (2d Cir.) (situs of debt on deposits in Costa Rican banks was New York where deposits were to be repaid New York), *cert. dismissed*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985); *Garcia v. Chase Manhattan Bank, N.A.*, 735 F.2d 645, 650–51 (2d Cir.1984) (situs of debt, for act-of-state-doctrine purposes, on deposits in Cuban branch was not limited to Cuba where deposits were payable at other branches around the world); *id.* at 651–52 (Kearse, *J.*, dissenting); *cf. Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 225 (2d Cir.1985) (situs of debt was "wholly" within Mexico for act-of-state-doctrine purposes where deposit contracts specified Mexico as place of repayment).

■ We agree with the district court that an agreement by the parties to make a deposit debt repayable at a place other than the bank branch carrying the deposit appears to be valid under Philippine law as well as United States law. *See* Civil Code of the Philippines art. 1159 ("Obligations arising from contracts have the force of law between the contracting parties and should be complied with in good faith.") Whether or not the parties have entered into such an agreement is a question of fact, and a finding of such an agreement is subject to review under the "clearly erroneous" standard, Fed.R.Civ.P. 52(a). *See Wards Co. v. Stamford Ridgeway Associates*, 761 F.2d 117, 120 (2d Cir.1985).

In the present case, the district court found that the parties had agreed that repayment was to occur in New York. That finding plainly is not clearly erroneous. The Astley reports stated "Repay: Wells Fargo International, *New York Account* Wells Fargo Asia Ltd., Singapore," and "Repayment—Wells Fargo Bk Intl *NYC Ac* Wells Fargo Asia Ltd Sgp ...." (Emphasis added.) The written confirmations exchanged by the parties were similar. For example, Citibank/Manila's own telex-

es to WFAL stated: "At maturity we remit US Dlr 1,049,444.44 *to your account with Wells Fargo Bank Intl Corp NY through Citibank New York."* (Emphasis added.) The repeated references to repayments or remittances at maturity to New York accounts amply support the district court's finding that the parties agreed that repayment would be made in New York. Since MAAB 47 has no effect on a bank's obligations to perform acts outside of the Philippines, we conclude that the district court did not err in upholding WFAL's claim.

The district court's view that repayment and collection are divisible concepts does not require a different result. The above authorities suggest that a debt may be collected wherever it is repayable, unless the parties have agreed otherwise. Since the court found here that there was no separate agreement restricting where the deposits could be collected, and we are aware of nothing in the record that contradicts that finding, we conclude that WFAL was entitled to collect the deposits out of Citibank assets in New York.

Finally, we note that the gist of the concerns expressed by the amici is their "policy interest in the principle that, *in the absence of agreement to the contrary,* a U.S. bank should not bear the risk that a foreign government will impose restrictions on the deposits of its foreign branches." (Letter of the United States to this Court, dated June 14, 1988; emphasis added). Our affirmance in the present case is based on the district court's finding of just such an agreement.

## CONCLUSION

The judgment of the district court is affirmed.