SOUTHERN PACIFIC RAILROAD COMPANY *v.* A. J. LYON.

[54 South. 728.]

GARNISHMENT. *Jurisdiction. Situs of debt.*

> If the garnishee be found in this state and process be personally served upon him therein, the court acquires jurisdiction over him, and can garnish the debt due from him to the debtor of plaintiff, and condemn it, provided the garnishee could himself be sued by his creditors in this state, regardless of the original situs of the debt outside of the state.

APPEAL from the chancery court of Lauderdale county. HON. SAMUEL WHITMAN, JR., Chancellor.

Bill by A. J. Lyon & Company against the Southern Pacific Railroad Company. Demurrer to bill overruled and defendant appeals.

*Bourdeaux & Venable,* for appellant.

The first ground or proposition which we wish to discuss is that challenging the jurisdiction of the court on

the ground that the situs of the debt attached in the hands of the New Orleans & Northeastern Railroad Company, or rather sought to be attached, is in Louisiana, or some other state and without the jurisdiction of this court.

The correct solution of this question of jurisdiction depends upon the answers which are given to two questions.

1st.   Where is the situs of the debt sought to be bound in the hands of the New Orleans & Northeastern Railroad Company?   Of course, if the situs of the debt, sought to be bound in the hands of this resident defendant, is not within the jurisdiction of Mississippi, it cannot be reached by process issuing out of any court of the state and nothing has been attached in this case as provided for by the statute under which the action was brought.   This must follow since the action brought by Lyons is a proceeding against specific property, debt or funds, for the purpose of fixing a lien upon it or taking it into legal custody for the purpose of subjecting it to the satisfaction of any judgment which may be finally rendered in the cause.   *Railroad Co.* v. *Smith,* 70 Miss. 344.

We state our contention, briefly, by saying that for purposes of attachment or garnishment the situs of a debt is at the domicile of the creditor (The Southern Pacific Railroad Company).   *Railroad Co.* v. *Smith,* 70 Miss. 344; *Bucy* v. *Railroad Co.* (Miss.), 22 So. 295; *Railroad Co.* v *Nash* (Ala.), 23 So. 825; *Railroad Co.* v. *Chumley,* 9 So. 286; *Lovejoy* v. *Albee,* 54 Am. Dec. 630; *Smith* v. *Eaton,* 58 Am. Dec. 746; *Central Trust Co.* v. *Railroad Co.,* 68 Fed. 685; *Mason* v. *Beebee,* 44 Fed. 556.

We now proceed to the discussion of our second question first above asked.

The situs of the debt being in a foreign jurisdiction and for that reason the proceeding, as a proceeding *in rem* having failed, can the court, under the authority of

the statute under which this cause was brought, retain jurisdiction, for the purpose of trying the cause on the merits and rendering a personal decree, the defendant having been personally served with summons or having entered appearance, or, on the other hand, is the existence of the grounds for attachment the *sine qua non* of jurisdiction for any purpose?

We submit that it cannot; that the existence of the grounds for the attachment is the *sine qua non* of jurisdiction for any purpose and they having been determined not to exist the suit must be dismissed for any and all purposes. *Chamberlain Academy* v. *Port Gibson,* 80 Miss. 517.

The question is one of jurisdiction. The statutes giving the right to, both in law and chancery, are in derogation of the common law, which knew no such proceedings and are to be strictly construed. The courts having no authority to entertain suits of this character except upon grounds and in the cases specified according to a strict construction of the statutes which confer the right and authority. *Rankin* v. *Dulaney,* 43 Miss. 197.

We submit that the jurisdiction of the chancery court exists only by virtue of the statute and is no greater than that specifically conferred in terms. The statute says (Code 1906, § 536): "The chancery court shall have jurisdiction of attachment suits, etc., against any non-resident, absent or absconding debtor, who has lands or tenement in this state, or where there are persons, who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor. The court shall give a decree *in personam,* against such non-resident, absent or absconding debtor, if summons has been personally served upon him or if he has entered an appearance."

By the very language of the statute, jurisdiction is conferred in two and only two cases: (1) The debtor must have lands or tenements in this state, or (2) there must be a resident or "persons in this state" who have

goods, effects or debts belonging to the non-resident debtor and in addition to this, the debtor must be non-resident, absent or absconding. In the absence of these grounds, the chancery court had no jurisdiction to attach, unless given by the last sentence, which cannot be the case since that only has reference to the action of the court after the debtor has been brought in personally. *Lumber Co.* v. *Bank,* 86 Miss. 419.

*McBeath & Miller,* for appellee.

This was an attachment in the chancery court filed under sections 536 and 537, Code 1906, which sections are as follows:

"Attachment against non-residents: The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising *ex delicto* against any non-resident, absent or absconding debtor, who has lands or tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor. The court shall give a decree *in personam* against such non-resident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance.

"The same: How effects or indebtedness bound: When a bill shall be filed for an attachment of the effects of a non-resident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in this state to such non-resident, absent or absconding debtor, it shall be sufficient, to bind such effects or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defend-

ant, and the indebtedness of such defendant, to the non-resident, absent or absconding debtor, to the demand of the complainant; or, instead of such statement on the summons, a copy of the bill may be served with the summons, and shall bind the effects or indebtedness from the time of such service.''

The situs of the debt in this case has nothing to do with the matter. But for a few moments, we will briefly discuss that feature of the case. Since the decision of our court in the cases cited by counsel for appellant, the United States Supreme Court, the highest tribunal in our land, has recently decided the exact case in point, and adversely to the contention of counsel for appellant. *Sturn* v. *Chicago & Rock Island Railroad Co.*, 174 U. S. 710; *L. & N. R. R. Co.* v. *Deer*, 200 U. S. 176; *Harris* v. *Balk*, 198 U. S. 215.

We believe that this court, after a careful perusal of the three United States Supreme Court cases heretofore cited, will reverse the old Mississippi doctrine and will accord to its own citizens the same right in the collection of their debts as given to their creditors in collecting from them.

WHITFIELD, C.

This is an attachment suit in the chancery court, brought under the authority of section 536 of the Mississippi Code of 1906. A. J. Lyon & Co., complainant in the court below and appellee here, sued out an attachment in the chancery court of Lauderdale county, Mississippi, against the Southern Pacific Company and New Orleans & Northeastern Railroad Company. The Southern Pacific Company is a nonresident of the state of Mississippi, and has no lines or agents in the state of Mississippi. The New Orleans & Northeastern Railroad Company is a Louisiana corporation, with its general offices in New Orleans, Louisiana, but owns and operates a line of railroad in the state of Mississippi. The com-

plainant, in its original bill and the several amendments thereto, seeks by virtue of section 536 of the Code of 1906 to subject to the satisfaction of its claim any debt or funds due the Southern Pacific Company. The New Orleans & Northeastern Railroad Company, nominally a codefendant, but in effect a mere trustee or garnishee, filed an answer, in which it set up that it was indebted to the Southern Pacific Company, but that said indebted-ness did not arise in the state of Mississippi, that its general offices are in New Orleans, Louisiana, and that said indebtedness was payable by voucher issued from said general offices to said Southern Pacific Company, a nonresident of the state of Mississippi, and set up other facts showing that the situs of the debt was elsewhere than Mississippi. The gravamen of the complainant against the Southern Pacific Company is that it entered into a contract with complainant to safely transport within a reasonable time a car load of goods from Fresno, California, to Meridian, Mississippi, via the Queen & Crescent at New Orleans, but that, notwith-standing its said "*contract,*" the defendant wrongfully delivered the said car to the Illinois Central Railroad at New Orleans, which fact caused the car to be delayed in arriving at Meridian, Mississippi, and because of this delay the complainant suffered damages. The original bill of lading issued by the Southern Pacific Company is filed as exhibit to complainant's bill, and is prayed to be made a part thereof. The Southern Pacific Com-pany interposed a demurrer to complainant's bill and set out as grounds for demurrer, among other things, that the situs of the debt was elsewhere than in Miss-issippi, thereby depriving the chancery court of Lauder-dale county of jurisdiction, and that the bill of complaint fails to state a cause of action, for that the contract sued on, to wit, the bill of lading, shows that the Southern Pacific Company undertook only to transport said car from Fresno to El Paso, and that the terms of said bill

of lading, which are binding and conclusive on the complainant, are in hostile conflict with, and in open contradiction to, the vague and general averments of the bill. This demurrer was overruled by the court below, and the Southern Pacific Company was granted an appeal to this court from the said order overruling its demurrer.

The second ground of the demurrer, claiming that no cause of action was set out in the bill because the contract sued on, to wit, the bill of lading, shows that the · Southern Pacific Company undertook only to transport said car from Fresno to El Paso, and that the terms of said bill of lading were in conflict with the general averments of the bill, is not well taken. The view asserted by the demurrer is too narrow. The bill of lading must be taken as a whole, and it provided that the Southern Pacific Company should deliver the car to the Queen & Crescent System at New Orleans, Louisiana. The demurrer, of course, admitted this allegation. As a matter of fact, the goods were transported beyond El Paso, more than one thousand miles to New Orleans. Taking all the provisions of the bill into view, this ground of demurrer was not well taken. And this brings us to the serious controversy in the case, which is whether the doctrine announced in the case of *Railroad Co.* v. *Smith,* 70 Miss. 344, 12 South. 461, 19 L. R. A. 577, 35 Am. St. Rep. 651, is sound. It is in direct conflict with three decisions of the United States Supreme Court: *Chicago & Rock Island Railroad Co.* v. *Sturn,* 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144; *L. & N. R. R. Co.* v. *Deer,* 200 U. S. 176, 26 Sup. Ct. 207, 50 L. Ed. 426; and *Harris* v. *Balk,* 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023.

A great deal of the confusion on this subject arises from a too superstitious regard for what is called the situs of the debt. In the case *supra,* in 174 U. S. at page 714, 17 Sup. Ct. 799 (43 L. Ed. 1144), it is said that: "Our attachment laws had their origin in the custom of

London.   Drake, § 1.   Under it a debt was regarded as
being where the debtor was, and questions of jurisdic-
tion were settled on that regard.''   Again, the court
said:   ''The essential service of foreign attachment laws
is to reach and arrest the payment of what is due and
might be paid to a nonresident to the defeat of his cred-
itors.   To do it he must go to the domicile of his debtor,
and can only do it under the laws and procedure in force
there.   This is a legal necessity, and considerations of
situs are somewhat artificial.   If not artificial, whatever
of substance there is must be with the debtor.   He, and
he only, has something in his hands.   That something is
the *res,* and gives character to the action as one in the
nature of a proceeding *in rem.*   A notice to the debtor
must be given, and can only be given and enforced where
he is.   There is a necessity, and it cannot be evaded by
insistence upon fictions or refinements about situs or the
rights of the creditor.''

In the case of *Harris* v. *Balk, supra,* the court said:
''Attachment is the creature of the local law; that is,
unless there is a law of the state providing for and per-
mitting the attachment, it cannot be levied there.   If
there be a law of the state providing for the attachment
of the debt, then if the garnishee be found in that state,
and process be personally served upon him therein, we
think the court thereby acquires jurisdiction over him,
and can garnish the debt due from him to the debtor
of the plaintiff, and condemn it, provided the garnishee
could himself be sued by his creditor in that state.   We
do not see how the question of jurisdiction *vel non* can
properly be made to depend upon the so-called original
situs of the debt, or upon the character of the stay of the
garnishee, whether temporary or permanent, in the state
where the attachment is issued.   Power over the person
of the garnishee confers jurisdiction on the courts of the
state where the writ issued.   *Blackstone* v. *Miller,* 188
U. S. 189, 206, 23 Sup. Ct. 277, 47 L. Ed. 439.   If, while

99 Miss.—13

temporarily there, his creditor might sue him there and recover the debt, then he is liable to process of garnishment, no matter where the situs of the debt was originally. We do not see the materiality of the expression 'situs of the debt,' when used in connection with attachment proceedings. If by situs is meant the place of the creation of the debt, that fact is immaterial. If it be meant that the obligation to pay the debt can only be enforced at the situs thus fixed, we think it plainly untrue. The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes. He is as much bound to pay his debt in a foreign state, when therein sued upon his obligation by his creditor, as he was in the state where the debt was contracted. We speak of ordinary debts, such as the one in this case. It would be no defense to such suit for the debtor to plead that he was only in the foreign state casually or temporarily. His obligation to pay would be the same, whether he was there in that way or with an intention to remain. It is nothing but the obligation to pay which is garnished or attached. This obligation can be enforced by the courts of the foreign state after personal service of process therein, just as well as by the courts of the domicile of the debtor. If the debtor leave the foreign state without appearing, a judgment by default may be entered, upon which execution may issue, or the judgment may be sued upon in any other state where the debtor might be found. In such case the situs is unimportant. It is not a question of possession in the foreign state, for possession cannot be taken of a debt or of the obligation to pay it, as tangible property might be taken possession of. Notice to the debtor (garnishee) of the commencement of the suit, and notice not to pay to his creditor, is all that can be given, whether the garnishee be a mere casual and temporary comer, or a resident of the state where the attachment is laid. His obligation to pay to his creditor is thereby arrested, and a lien created upon

the debt itself. *Cahoon* v. *Morgan,* 38 Vt. 234, 236; *National Fire Insurance Co.* v. *Chambers,* 53 N. J. Eq. 468, 483, 32 Atl. 663. We can see no reason why the attachment could not be thus laid, provided the creditor of the garnishee could himself sue in that state and its laws permitted the attachment. There can be no doubt that Balk, as a citizen of the state of North Carolina, had the right to sue Harris in Maryland to recover the debt which Harris owed him. Being a citizen of North Carolina, he was entitled to all the privileges and immunities of citizens of the several states, one of which is the right to institute actions in the courts of another state. The law of Maryland provides for the attachment of credits in a case like this. . . . It thus appears that Balk could have sued Harris in Maryland to recover his debt, notwithstanding the temporary character of Harris' stay there. It also appears that the municipal law of Maryland permits the debtor of the principal debtor to be garnished, and therefore, if the court of the state where the garnishee is found obtains jurisdiction over him, through the service of process upon him within the state, then the judgment entered is a valid judgment. See Minor on Conflicts of Laws, § 125, where the various theories regarding the subject are stated and many of the authorities cited. He there cites many cases to prove the correctness of the theory of the validity of the judgment where the municipal law permits the debtor to be garnished, although his being within the state is but temporary. See pages 289, 290. This is the doctrine which is also adopted in *Morgan* v. *Neville,* 74 Pa. 52, by the supreme court of Pennsylvania, per Agnew, J., in delivering the opinion of that court. The same principle is held in *Wyeth Hardware Co.* v. *Lang,* 127 Mo. 242, 247, 29 S. W. 1010, 27 L. R. A. 651, 48 Am. St. Rep. 626, in *Lancashire Insurance Co.* v. *Corbetts,* 165 Ill. 592, 46 N. E. 631, 36 L. R. A. 640, 56 Am. St. Rep. 275, and in *Harvey* v. *Great Northern Ry. Co.,* 50 Minn. 405, 406,

407, 52 N. W. 905, 17 L. R. A. 84, and to the same effect in *Embree* v. *Hanna,* 5 Johns. (N. Y.) 101; also *Savin* v. *Bond,* 57 Md. 228, where the court held that the attachment was properly served upon a party in the District of Columbia while he was temporarily there, that as his debt to the appellant was payable wherever he was found, and process had been served upon him in the District of Columbia, the Supreme Court of the District had unquestioned jurisdiction to render judgment, and, the same having been paid, there was no error in granting the prayer of the appellee that such judgment was conclusive. The case of *Douglass* v. *Insurance Co.,* 138 N. Y. 209, 33 N. E. 938, 20 L. R. A. 118, 34 Am. St. Rep. 448, is not contrary to this doctrine. The question there was not as to the temporary character of the presence of the garnishee in the state of Massachusetts; but, as the garnishee was a foreign corporation, it was held that it was not within the state of Massachusetts, so as to be liable to attachment by the service upon an agent of the company within that state. The general principle laid down in *Embree* v. *Hanna,* 5 Johns. (N. Y.) 101, was recognized as correct. There are, as we have said, authorities to the contrary, and they cannot be reconciled. It seems to us, however, that the principle decided in *Chicago, R. I. & P. Ry. Co.* v. *Sturn,* 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144, recognizes the jurisdiction, although in that case it appears that the presence of the garnishee was not merely a temporary one in the state where the process was served. In that case it was said: ' "All debts are payable everywhere, unless there be some special limitation or provision in respect to the payment; the rule being that debts as such have no locus or situs, but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere." 2 Parsons on Contracts (8th Ed.), 702; Id. (9th Ed.), 739. The debt involved in the pending case had no "special limitation or provision in respect to payment." It was

payable generally, and could have been sued on in Iowa, and therefore was attachable in Iowa. This is the principle and effect of the best considered cases, the inevitable effect from the nature of transitory actions and the purpose of foreign laws, if we would enforce that purpose.' The case recognizes the right of the creditor to sue in the state where the debtor may be found, even if but temporarily there, and upon that right is built the further right of the creditor to attach the debt owing by the garnishee to his creditor. The importance of the fact of the right of the original creditor to sue his debtor in the foreign state, as affecting the right of the creditor of that creditor to sue the debtor or garnishee, lies in the nature of the attachment proceeding. The plaintiff, in such proceeding in the foreign state, is able to sue out the attachment and attach the debt due from the garnishee to his (the garnishees) creditor, because of the fact that the plaintiff is really in such proceeding a representative of the creditor of the garnishee, and therefore, if such creditor himself had the right to commence suit to recover the debt in the foreign state, his representative has the same right, as representing him, and may garnish or attach the debt, provided the municipal law of the state where the attachment was sued out permits it. It seems to us, therefore, that the judgment against Harris in Maryland, condemning the one hundred and eighty dollars which he owed to Balk, was a valid judgment, because the court had jurisdiction over the garnishee by personal service of process within the state of Maryland.''

There does not appear to us, after the most mature consideration, any satisfactory answer possible to be made to the force of the reasoning in this case. It is extremely desirable that, upon questions of this sort, this court would be bound to follow the United States Supreme Court. It is obvious that whenever a case might arise, where the judgment of a sister state in this

sort of proceeding was valid under the laws of that state, this court would be bound to follow the the United States Supreme Court, and overrule in that class of cases the case of *Railroad* v. *Smith,* 70 Miss. 344, 12 South. 461, 19 L. R. A. 577, 35 Am. St. Rep. 651, *supra,* because this court would be bound to give full faith and credit to such valid judgment of a sister state under the Constitution of the United States. It would be a very incongruous spectacle to have one line of decisions of the kind just specified repudiating *Railroad Co.* v. *Smith,* and another line of cases upholding it, where the facts were identical. Being thoroughly satisfied of the correctness of the view of the United States Supreme Court as an original proposition, and of the incorrectness of the doctrine announced in *Railroad Co.* v. *Smith,* 70 Miss. 344, 12 South. 461, 19 L. R. A. 577, 35 Am. St. Rep. 651, and realizing the great inconvenience and undesirability of not following the United States Supreme Court in cases of this character, we are constrained to overrule, and do hereby overrule, the case of *Railroad Co.* v. *Smith,* 70 Miss. 344, 12 South. 461, 19 L. R. A. 577, 35 Am. St. Rep. 651, and all other cases in this state holding that doctrine, and now declare the rule on this subject in this state for the future to be that announced in the case of *Harris* v. *Balk,* 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023, *supra.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and, for the reasons therein stated, the decree of the chancery court overruling the demurrer is affirmed, and the cause remanded for answer, to be filed within thirty days from the filing of the mandate in the court below.