Keathley *v.* Hancock.

Division B. June 11, 1951.

No. 38009 (53 So. (2d) 29)

(1)

**Guy Mitchell, Sr. & Jr.,** for defendant Keathley.

Ely B. Mitchell, for garnishee.

Cunningham & Cunningham, for appellee.

**Roberds, P. J.**

This appeal involves the correctness of the action of the trial court in striking the answer of the Express Company, garnishee, and rendition of judgment by default against that Company and against Keathley, under the circumstances now set out.

Mrs. Hancock, as plaintiff, asserted in her declaration that she became ill from eating deleterious pies prepared and sold by Keathley to the general public. The

ground of liability was breach of an implied warranty that the food was fit for human consumption. The pies were prepared by Keathley in Memphis, Tennessee, the domicile of Keathley's place of business, and of which City he was a resident citizen. Plaintiff was a resident of Prentiss County, Mississippi. She ate the pie and became ill in that County. She instituted this attachment proceeding for damages against Keathley as a nonresident of Mississippi under Section 2679, Miss. Code 1942, and suggested in writing that the Express Company, also a nonresident but doing business and having agents in this State, be garnished under Section 2798 of said Code. A writ of attachment issued against Keathley and a writ of garnishment issued to the Express Company. The sheriff returned he could not find Keathley personally, or any property belonging to him, in Prentiss County, but that he had served a copy of the garnishment upon the Express Company. Publication was made for Keathley. The Express Company answered that it had no effects or property of Keathley's in its possession or under its control, was not indebted to him, and that it did not know of any other person so indebted to, or in possession of property or effects of, Keathley.

On August 1, 1949, the return day of the attachment publication, Keathley appeared specially and moved the dismissal of the proceedings against him for lack of jurisdiction.

On August 10, 1949, Mrs. Hancock filed a written contest of the answer of the garnishee, and prayed that an issue be made up for that purpose. She said she was not then prepared to make the contest and asked that the matter be continued to the next term of court, which was done.

On September 21, 1949, Mrs. Hancock filed interrogatories to the Express Company as a nonresident defendant under Section 1712, Code of 1942. The Express Com-

pany answered the interrogatories. Mrs. Hancock being dissatisfied with the answers propounded other interrogatories to the Express Company on January 26, 1950. On February 13, 1950, the Express Company moved to strike the interrogatories theretofor propounded to it and the answers it had made thereto on the grounds (1) it was not such a party defendant as was contemplated under Section 1712, (2) that the relation between it and Keathley was that of agent and principal and not that of debtor and creditor, and (3) to properly answer the interrogatories would require an audit of over eight hundred offices, imposing unreasonable burden and expense upon it as garnishee. On February 13, 1950, Mrs. Hancock moved to strike the answer of the garnishee on the ground it had failed to make proper answers to that interrogatory. At this stage, and under date of February 24, 1950, Mrs. Hancock moved to amend her declaration so as to sue for $3,000 instead of $225, as originally named in the declaration, and increase her attachment bond from $500 to $6,000. On the same day an order was granted by the court permitting such amendments. That action will be discussed later. Also, on that day, the Express Company filed amended answers to the interrogatories and it also moved the court to suppress and strike certain of the answers it had already made to the questions Mrs. Hancock had propounded. On May 23, 1950, the trial judge took all the foregoing matters under advisement. The case then came on for hearing August 7, 1950, a day of the regular term; whereupon, Keathley moved the dismissal of the suit on the grounds (a) the court had no jurisdiction, (b) that no property of Keathley's had been seized within the jurisdiction, of the court, (c) that the garnishee had denied it was indebted to, or had property of, Keathley, and that (d) the Express Company had answered its only relation to Keathley was that of carrier and f. o. b. collector for goods transported by it, which was not a

debt within the garnishment statute of Mississippi. On August 18, 1950, the court entered an order striking the answer of the garnishee, and awarding judgment against it in favor of Mrs. Hancock for $3,000 but ordered stay of execution on the judgment until she had procured judgment against Keathley. On August 19, 1950, default judgment was taken against Keathley as to liability; on the same day a writ of inquiry issued for assessment of the damage for a jury, which was done, the jury, by its verdict, fixing the amount of $3,000; whereupon judgment was entered against the Express Company for $3,000.

Appellants first urge that the court erred in striking the answer of the garnishee. In determining the action it should take in this regard the trial court considered both the answer of the garnishee and also its answers to the interrogatories. The answer to the writ of garnishment was in statutory form simply saying it had no effects or money of Keathley in its possession, was not indebted to him, and knew of no other person in such possession or so indebted. As stated, Mrs. Hancock filed a contest to this answer and asked that an issue be made up to try the contest, but no issue was made up. Mrs. Hancock propounded the first interrogatories to the Express Company. The answers thereto stated that between May 21, 1949, date of service of the writ of garnishment, and August 1, 1949, the return date thereof, its connection with Keathley was that of a carrier of the food products of Keathley and a c. o. d. collector for the price thereof upon delivery by it to purchasers in the states of Arkansas, Tennessee and Mississippi, and that the money so collected had been remitted by it to Keathley. These interrogatories did not ask for the number of such shipments, nor for the amount of the collections, nor did the answers thereto give that information. The Express Company stated its books were open for inspection and audit by plaintiff and it was ready to give her any further information it could as to the nature of the business being transacted between it and Keathley. Not

being satisfied with these answers Mrs. Hancock propounded the second set of interrogatories to the Express Company. These, to a great extent, repeated the former questions and answers, and then asked for dates of shipments, names of consignees and amounts of c. o. d. collections. The first interrogatories were filed September 21, 1949. The answers made were filed January 25 thereafter. The additional interrogatories were filed January 26, 1950. On February 13, 1950, before answering the second interrogatories, the Express Company moved ''to suppress the deposition in this case taken by the plaintiff'', taking the position (1) the court had no jurisdiction to require it to furnish information as to its business with Keathley in Arkansas and Tennessee, nor in the State of Mississippi outside the County of Prentiss, where the action was pending; (2) that it would place upon the garnishee an unreasonable burden and expense to require it to audit its 866 offices in said three states to ascertain the desired information; (3) that it had offered plaintiff the privilege of examining and auditing all of its records, and (4) repeated that its relation to Keathley was that of a common carrier with the additional contract to collect the c. o. d. charges and remit to Keithley; that there was no debt, and, therefore, it was not subject to garnishment. On the same day Mrs. Hancock filed a motion to strike the answer of the garnishee and for judgment against it by default under said Section 1712. The record does not disclose which motion was first filed, but neither was then acted upon.

On February 24, 1950, the Express Company filed answers to the additional interrogatories. It again raised the legal questions invoked in its motion to suppress the first answers, above detailed; said it did not know the number of c. o. d. shipments it had received from Keathley; could not furnish the information within the time allowed; that to do so would entail unreasonable expense;

offered its books and records for inspection by Mrs. Hancock, and stated that its accounting office was at Chattanooga, Tennessee, where "its records with respect to actual money collected and disbursed in this area was kept . . ."

On February 24, 1950, the Express Company filed a motion to strike the questions calling for the names, number, post-office addresses of the consignees of such shipments, and amounts collected from each, raising the same question above set out, with the additional contentions (1) to require the information would violate its rights under the due process clause of the Constitution of the United States, (2) would be an unwarranted interference with interstate commerce, and again offered its books and records for inspection and examination by plaintiff.

It appears, although we do not find it in the record, that Mrs. Hancock filed another motion for time to contest the proposed garnishment issue, in which she alleged the Express Company, within the period involved, had received for transportation and collection hundreds of dollars worth of c. o. d. shipments and had accumulated many thousand dollars from such shipments, and had not made truthful answers.

On February 24, 1950, the Express Company replied to that motion, denying the charges therein; said the statements made in the answers were true, and that plaintiff had not dealt fairly with defendants in that the entire proceeding, prior to the amendment of the declaration and bond, had been to collect $225, and that on that basis the interrogatories were propounded and the garnishee filed its answer to the writ and its responses to the interrogatories.

On February 13, 1950, the Express Company made a motion to require plaintiff to give security for costs. The court sustained the motion and the security was given.

On August 18, 1950, he struck the answer of the garnishee and rendered the judgments against the garnishee and Keathley, as above stated.

We have labored to set forth these various steps and proceedings believing they have a bearing upon the drastic action taken by the court in this case.

The motion of plaintiff to strike the answers of the Express Company to the interrogatories expressly invokes and relies upon Section 1712, Miss. Code 1942, That section reads: "If the testimony of a party to the suit who resides out of the state be desired by the adverse party, interrogatories to him may be filed in the clerk's office, and a copy thereof, with notice of filing, shall be given the party, or his attorney or solicitor; and if he fail to answer such interrogatories within a reasonable time, his plea shall be dismissed, if he be plaintiff or complainant, and if he be defendant his plea or answer may be taken off the file and judgment by default entered, or the bill be taken as confessed." ▆▆ That section is highly penal and is construed strictly to prevent the penalty therein provided from being imposed. Givens v. Southern Express Co., 106 Miss. 834, 64 So. 737; Smithers v. Metropolitan Discount Co., 124 Miss. 833, 87 So. 284; Higgins Lbr. & Export Co. v. Price, 120 Miss. 123, 81 So. 787. The first interrogatories here propounded were fully answered. The principal defaults in garnishee's answers to the second set of interrogatories were its failure to give the dates of express shipments, the names of the consignees and the amounts collected from each in the states of Arkansas, Tennessee and Mississippi from May 21, 1949, to August 1 thereafter. ▆▆ The Express Company took the position (1) the court had no jurisdiction to require this information other than in Prentiss County, (2) that its relation with Keathley was not that of debtor and creditor and not such as was subject to garnishment, (3) that it had 866 offices in said three states and it would take an audit of these offices to accurately furnish the infor-

mation sought, which would impose an unreasonable burden upon the garnishee, and (4) that its books were open to inspection and examination by the plaintiff. The garnishee had the right to raise the legal questions. Its position in so doing was reasonable. It had the right also to submit to the court the reasonableness of its refusal to answer the questions in the respects indicated, and if the court, upon proper hearing, ordered it to answer the questions, then to be given ample time within which to do so. The action of the trial court in striking the answer of the garnishee and rendering judgments against defendants, tested by the circumstances of this case and the rules announced in the cited cases, was reversible error.

This makes it necessary for us to pass upon other questions raised by Keathley and the Express Company. ██ ██ The Express Company says to require it to make answer to the writ would require an audit of many offices in Arkansas, Tennessee and Mississippi, necessitating an undue burden upon it. If such should be the case, we think it would be too great a burden. Just what would have to be done can be ascertained upon proper hearing before the trial court. However, it would appear from answers made by the Express Company that this information, or such of it as may be necessary, is gathered in one or two, or, at most, a few, offices. If that is true, requirement that it be furnished would not appear too great a burden. Although there may be many offices, the amount for which suit was brought might require examination of few of them. For instance, there would seem no need to discover and report an obligation to pay more than that sum with an addition sufficient to cover costs. The matter is largely within the discretion of the trial judge.

██ ██ It is also claimed by defendants that the lower court acquired no jurisdiction because the answer of the garnishee shows it received no shipments from Keathley destined to Prentiss County, Mississippi. That conten-

tion is not well taken. Southern Pacific R. Co. v. A. J. Lyon & Co., 99 Miss. 186, 54 So. 728, 34 L. R. A., N. S., 234; 38 C. J. S., Garnishment Sections 126, 125(b), pages 341, 340; 4 Am. Jur. p. 598, Section 78. It is true the authorities are divided upon this question. Some hold that the situs of the debt is at the residence of the creditor; others that the situs is not only at the domicile of the debtor, but exists only in a state in which the garnishee may be found. The rule established by the Supreme Court of the United States, and by this Court, is that ██ ██ jurisdiction to attach or garnish a debt is not dependent upon the abstract conception of the situs of the indebtedness in question, but rather upon the power of the court over the person of the garnishee, and, more particularly, upon the liability of the garnishee to suit in such court by his creditor. ██ ██ "In other words, if a creditor can enforce a claim against his debtor in a certain jurisdiction, that claim can be garnished, and the debtor summoned as garnishee in that jurisdiction in an action against the creditor". 4 Am. Jur. 590 Section 67; Southern Pacific Railroad Co. v. Lyon, supra; Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. Ed. 1023. In the Lyon case, supra, both defendants—the principal debtor and the garnishee—were nonresident railroads of the State of Mississippi. Lyon, plaintiff, was a resident of this State. The Southern Pacific Railroad, the principal debtor, had no lines or agents in Mississippi, nor had it done any business therein. The garnishee was a corporation under the laws of Louisiana, with general offices in that state, but it owned and operated a line of railroad in Mississippi. The garnishee, in its answer, set up that it was indebted to the Southern Pacific but that the debt was created and arose out of the State of Mississippi. Both defendants claimed the Mississippi court had no jurisdiction for the foregoing reasons. This Court held that the Lauderdale County, Mississippi, court did have jurisdiction, announcing the test therefor the rule above set out. This is a parallel situation to the

case at bar except that the answers of the Express company to the interrogatories, fairly construed, mean that, within the date about which inquiry is made, it had received c. o. d. shipments from Keathley in the State of Mississippi but not in Prentiss County, whereas in the Lyon case the debt arose entirely out of this State, which fact makes the case at bar a stronger case, if that be needed, for the existence of jurisdiction in this State.

It is next urged by appellants that the court had no jurisdiction for the reason that the relation between Keathley and the Express Company was that of principal and agent—not that of creditor and debtor; that action by Keathley against the Express Company would have been a claim for unliquidated damages based upon breach of duty of the agent to the principal, relying mainly upon Joseph Mogul, Inc. v. C. Lewis Lavine, Inc., 247 N. Y. 20, 159 N. E. 708, 57 A. L. R. 934. It is pointed out in that case that the relation between a shipper and a c. o. d. carrier is twofold—, as bailee to transport the goods and as agent to collect c. o. d. charges, and that as agent the carrier is liable for whatever could have been collected had it fully performed its duty. But the answers to the interrogatories show that the garnishee had fully performed its duty—that it had collected the charges—and had either remitted, or then withheld, the amounts so collected. The answers mean the garnishee had fully performed its duty in collecting the charges; that the amounts collected were those instructed by the shipper to be collected; that such amounts were not unliquidated. They were ascertained or ascertainable by examination of the records thereof. Proceeds from collections in the hands of the collecting agent are subject to garnishment. 4 Am. Jur. 738, Section 290; also page 637 Section 135. If the amount is capable of definite ascertainment garnishment will lie. 38 C. J. S., Garnishment, Section 9, page 215. It is the obligation which is attached. Harris v. Balk, supra. The form of the action does not determine

the character of the obligation. 38 C. J. S., Garnishment, Section 70, page 267. Here, according to the answers to the interrogatories, the Express Company simply owed Keathley the amounts it had collected from Keathley's c. o. d. consignees, which amounts were fixed and definite in each case and were known to both defendants. There was nothing unliquidated as to the amounts. Craig v. Gaddis, 171 Miss. 379, 157 So. 684, 95 A. L. R. 1494, is not to the contrary. There the garnishment was upon the c. o. d. consignee. The purchase money was paid by the consignee while the goods were yet in the hands of the carrier. The Court held that the consignee was not chargeable as garnishee since, under the contract, delivery of the flour and payment of the price were to be made simultaneously and the relation of debtor and creditor did not exist for that reason. Here the garnishment is against the carrier—not the consignee.

A plea of the Express Company suggests interference with interstate commerce. No such interference is here shown. The case is concerned only with proceeds of c. o. d. collections.

It should be added that, in the present state of the pleadings and record in the trial court, a judgment against defendants, if one should be obtained, would be limited to $225, the original suit being for that amount, and all processes and notices to defendants being based upon that amount, and the amendment increasing that amount being allowed upon the assumed assent of Keathley, which appellee frankly admits was not correct.

Reversed and remanded.