**ZIMMERMAN et al. v. HICKS, Alien Property Custodian, et al. (two cases).**

(Circuit Court of Appeals, Second Circuit. May 4, 1925.)

Nos. 286, 287.

**1. War ⊂⟩33—War between United States and Germany ceased on July 2, 1921.**

War between United States and Germany ceased on July 2, 1921, until which time German nationals were alien enemies, despite earlier resumption of commercial relations.

**2. War ⊂⟩34—Versailles Treaty held not to affect nor relate to claims of American depositor against German or Austrian bank.**

Versailles Treaty held not to affect nor relate to suit under Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), to collect debt due citizen from enemy property seized by Alien Property Custodian.

**3. War ⊂⟩12—Relation between American depositor and foreign alien enemy bank depository held relation of debtor and creditor; debt becoming due on "demand."**

Relation between American depositor and foreign alien enemy bank depository held relation of debtor and creditor, debt becoming due on demand, a "demand" being a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demand.]

**4. Banks and banking ⊂⟩119—Contract of foreign bank to pay deposit of American depositor on demand at its banking house held governed by law of place of performance of contract.**

Contract of foreign bank to pay deposit of American depositor on demand at its own banking house, is governed by law of place of performance of contract, even without specific agreement to that effect.

**5. Banks and banking ⊂⟩133—Contract of foreign depository bank to pay on demand "marks" or "kronen" could not be breached until demand for payment and its refusal.**

Contract of foreign depository bank to pay on demand "marks" or "kronen" could not be breached until demand for payment and its refusal; marks or kronen being, like dollars, merely legal and financial entities varying in exchange or purchasing power.

**6. War ⊂⟩12—Declaration of war held not equivalent to demand by American depositor upon alien enemy depositary bank for payment of account on deposit.**

Declaration of war of April 6, 1917, held not equivalent to a demand by American depositor upon alien enemy depositary bank for payment of account on deposit, otherwise the Trading with the Enemy Act, § 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½dd), would be surplusage.

**7. War ⊂⟩10(1, 2) — War merely suspends remedies available under executed contract.**

War does not affect the relations of the parties to an executed contract, but merely suspends remedies available thereunder.

**8. Banks and banking ⊂⟩133 — Request of American depositor to foreign alien enemy bank depositary held not a demand for payment of deposit account.**

Where plaintiffs, as depositors in a foreign enemy alien depositary bank, were entitled to marks or kronen payable in Germany or Austria, a request for payment to such banks, asking for the co-operation of the latter in their getting a certain number of dollars out of the Alien Property Custodian, held not a demand for payment of the deposit account.

**9. Payment ⊂⟩12(5)—American depositor of funds in foreign alien enemy depositary bank held entitled to recover only number of marks sued for and agreed upon at rate of exchange of date of demand of payment.**

American depositor of funds in foreign alien enemy depositary bank held entitled to recover only number of marks sued for and agreed upon at rate of exchange of date of demand of payment, and was not entitled to the dollar value as of the date when war was declared, of the marks and kronen on deposit with the foreign depositary.

**10. War ⊂⟩12—Decree limiting to defendant foreign depositary bank, as offset, its balance in hands of American depositor, as of date of declaration of war against Germany, held error.**

Decree limiting to defendant foreign depositary bank, as offset, its balance in hands of American depositor as of date of declaration of war against Germany, instead of striking an account as of the date when suit was instituted, held error.

**11. War ⊂⟩12—Payment into Austrian court by Austrian depositary bank, during war, of kronen due American depositor, held to extinguish latter's demand, in view of Austrian law.**

Payment into Austrian court by Austrian depositary bank, during war, of kronen due plaintiff American depositor held to extinguish plaintiff's demand against such bank, in view of Austrian law.

Appeals from the District Court of the United States for the Southern District of New York.

Suits by Leopold Zimmerman and others, trading as Zimmerman & Forshay, against Frederick C. Hicks, as Alien Property Custodian, and Frank White, as Treasurer of the United States, and the Deutsche Bank and the Wiener Bank-Verein. From the decrees rendered (2F.[2d] 623, 629), all parties appeal. Reversed and remanded, with directions.

These suits, under section 9 of the Trading with the Enemy Act (Comp. St. 1918,

Comp. St. Ann. Supp. 1919, § 3115½e), are alike in outline, were tried and argued together, and will be similarly disposed of.

Both proceedings were begun against Mr. Thomas W. Miller as Alien Property Custodian. Mr. Hicks has been substituted on appeal; he having been appointed, vice Miller, resigned, pendente lite.

Subpœnas in each case issued February 28, 1922, and in each the plaintiffs pleaded a demand for the amount in suit made upon the Custodian pursuant to section 8 of the statute (section 3115½dd) in December, 1921. No other demand was pleaded.

Deutsche Bank was and is a well-known banking institution of Germany, and Wiener Bank did a like business in Austria. In each of these banks plaintiffs had maintained, for years before the outbreak of the World War in August, 1914, a large deposit account. Though the methods in which depositors' accounts were availed of in Germany and Austria differed and differ somewhat from methods pursued in the United States, the differences existing give rise to no legal question important in these litigations.

Almost immediately after August, 1914, mail communication between America and the Central Powers became so difficult (owing to the British blockade) that there was practically no exchange of information or instruction between plaintiffs and these banks. For the purposes of these litigations, the deposit accounts remained substantially intact until this country entered the war on April 6, 1917, and until the passage of the Trading with the Enemy Act.

Mail communication was resumed rather early in 1919, and the material events of that year will be stated in the opinion following.

During war with the United States, the German Empire created an official (der Treuhänder) somewhat resembling the Alien Property Custodian, who, however, did not remove from Deutsche Bank the deposit of plaintiffs, but did lay a species of embargo or injunction upon any payments to or for account of plaintiffs upon said deposit. This embargo was not raised until December, 1921.

Austria never forbade any dealings with or for account of Americans during the war. In 1919 the currency or legal tender of both Germany and Austria was rapidly depreciating in exchange value, and efforts (hereinafter detailed) were made by plaintiffs to reach some satisfactory utilization of their still existing deposit accounts in the two banks.

These efforts failed. As to the Wiener Bank, at some time prior to April 1, 1920, plaintiffs refused to accept the Austrian kronen on deposit with that bank to the credit of plaintiffs. They refused either the kronen in kind or United States currency at the then prevailing rate of exchange. They demanded the exchange value of kronen at the rate prevailing immediately before hostilities were declared.

There then was in force a provision of Austrian statute law as follows: "If a debt cannot be paid because the creditor is * * * dissatisfied with the offer * * * the debtor may deposit in court the subject-matter in dispute. * * * If legally carried out and the creditor has been informed thereof (this measure) discharges the debtor of his obligation and places the subject-matter delivered at the risk of the creditor."

On April 1, 1920, Wiener Bank deposited the number of kronen here in suit in a court appropriate for that purpose under the statute cited, and gave notice to plaintiffs of what it had done.

Deutsche Bank was compelled, by the action of the Treuhänder, to retain possession of the marks on deposit with it to the credit of plaintiffs until December, 1921, or substantially the time when these suits were suggested, although not technically begun by the filing of the pleaded notices with the Alien Property Custodian.

Plaintiffs' position throughout in both cases has been and is that they are entitled to recover the dollar value on April 6, 1917, of the German marks and Austrian kronen on deposit with the respective defendant banks.

This measure of recovery was denied below, but plaintiffs were given decrees on the theory that they had demanded payment of each of the defendant banks in August, 1919. From decrees accordingly, all parties appealed.

Stockton & Stockton, of New York City (Joseph M. Hartfield, Hamilton Vreeland, Jr., K. E. Stockton, and Aron Steuer, all of New York City, of counsel), for plaintiffs.

Dean Hill Stanley, Sp. Asst. Atty. Gen., and Wm. Hayward, U. S. Atty., of New York City, for Alien Property Custodian and Treasurer of the United States.

Peaslee, Brigham & Gennert, of New York City (Thomas G. Haight, of Jersey

City, N. J., and Amos J. Peaslee, of New York City, of counsel), for Deutsche Bank.

Louis Manheim and Samuel R. Wachtell, both of New York City, for Wiener Bank.

Spier Whitaker, of New York City, amicus curiæ as to the rate of exchange applicable.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). There are several matters discussed at bar as to which discussion in this court may cease; we have expressed views which will remain in force until corrected by higher authority.

[1] War between the United States and Germany ceased on July 2, 1921. Re Miller (C. C. A.) 281 F. 764; c. f. Swiss National Ins. Co. v. Miller, 266 U. S. 42, 45 S. Ct. 213, Feb. 2, 1925. Undoubtedly commercial relations were more or less re-established for approximately two years before that date, but that fact does not affect the material point that until July 2, 1921, a German was an alien enemy.

The date at which exchange is to be computed we have covered in Guiness v. Miller (C. C. A.) 299 F. 538, and sufficiently assigned reasons for our holding.

[2] That the provisions of the Versailles Treaty do not affect nor relate to claims like that against the Deutsche Bank, we have also held in the Guiness Case, supra.

It is fundamental in both these suits to ascertain and declare the legal relation between plaintiffs and the defendant banks. It was admittedly that of depositor and banker, and there is no evidence that the nature of that common relation is not the same under German, Austrian, and American law.

[3] It is therefore so plain as to need no citation in support that the relation of parties was merely that of debtor and creditor, the debt due on demand, and therefore not due until demand was made; and a demand is "a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting." 3 Bouv. Law Dict. p. 2904.

[4] It is useful next to inquire by the law of what country the mutual rights and privileges of the parties are to be determined. We have no doubt that by specific agreement the duties and obligations of the banks were to be determined by German and Austrian law, respectively. But, even without such agreement, since each bank had in effect made a contract to pay on demand at its own banking house, the same result is reached by applying the familiar rule of the law of the place where the contract is to be performed; i. e. Germany or Austria, as the case might be. London Assurance v. Companhia, 167 U. S. 149, 17 S. Ct. 785, 42 L. Ed. 113.

The above holding is made in both of these suits, though, as will appear, it is not from our standpoint material in respect of the Deutsche Bank, but it does greatly affect the claim against the Wiener Bank.

[5] The question which most practically and very vitally affects these suits, and probably many others, may be thus put: What did the banks owe plaintiffs? In answer we think it plain that they did not owe a certain number of units of any fixed value, nor could their debts be expressed in any universal currency; they owed only certain quantities of the thing called money within that political subdivision of the world in which the bank existed and to the laws of which it was subject. Therefore neither of these banks ever owed the plaintiffs any dollars. The only method of describing their debts is to speak of so many marks or kronen, which, like dollars, are merely legal and financial entities varying in exchange or purchasing power for reasons with which no court has any concern and over which it has no power or authority.

Therefore all that any American court can do is to translate a demand for marks or kronen into the dollars with which alone can we deal; and we must make that translation according to the facts as proven at a time fixed by law, and what that time is we have declared in the Guiness Case, supra.

Since, therefore, there can be no breach of contracts such as those at bar until a demand and refusal, and no assessment of damages in dollars until such demand, the question of fact is acute: When did plaintiffs make a demand upon these banks or either of them?

[6, 7] We may premise this inquiry by stating our agreement with the lower court in rejecting plaintiff's contention that their rights were created by the declaration of war on April 6, 1917; i. e. that such declaration was equivalent to a demand and refusal. We feel assured that the declaration had no such effect. Of course a declaration of war could do no more than the war itself, and that war does not affect the relations of parties to an executed contract, but merely suspends the remedies available thereunder, was fully held in Hanger v. Abbott, 6 Wall. 532, 18 L. Ed. 939.

It is indeed obvious that, if the results of the declaration of April 6, 1917, were what plaintiffs claim, section 8 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½dd) is quite superfluous, for that statute creates a method of making a demand which admittedly these plaintiffs complied with, and no reason for such a proceeding can be found if the declaration was in and of itself a demand by every American creditor upon every alien enemy debtor.

[8] On this point of demand the evidence compels us to disagree with the court below. Passing the point that no demand was pleaded other than those of December 15, 1921, on the Custodian, it is argued that plaintiffs did in legal effect make several earlier demands, viz.: In March, 1919, by filing documents with the Custodian, and in August, 1919, by an interchange of letters and telegrams with both banks.

It would serve no useful purpose to recite the lengthy statutory demands of March, 1919; suffice it to say that we are convinced that all these documents related to the property of customers or clients of Zimmerman & Forshay which had either been impounded by the German authorities or lost track of in the fog of silence which had enveloped the Austrian bank. It is impossible to find in these documents any evidence of a demand for plaintiffs' own deposit account.

We are confirmed in this result by observing that as to each bank account, as soon as commercial relations were re-established, plaintiffs expressed the desire to go on with prewar business and maintain their old deposit accounts, and these desires were expressed after March, 1919.

Again in August, 1919, plaintiffs sent to each bank telegrams substantially as follows: "Regarding our old balance will you consent that Alien Property Custodian pay out of your firm funds in his custody equivalent in dollars at March 15, 1917, rate? * * * If you agree, wire us to that effect, and we will send you necessary papers to be filled out and signed by you. This will obviate lawsuit which we otherwise will be compelled to institute."

This was not a demand for plaintiffs' deposit accounts. It certainly, as was remarked by the court below, lacks some of the elements of a demand. We think it lacks too many to be a demand at all. What plaintiffs were entitled to were marks or kronen payable in Germany or Austria; what they asked for was the defendants' co-operation in their getting a certain number of dollars out of the Alien Property Custodian.

[9] In the case, therefore, of the Deutsche Bank (and here the cases of the two banks diverge) we are constrained to the conclusion that the only demand for this deposit account was the one pleaded in the bill, i. e., of December, 1921; so that plaintiffs can recover only the number of marks sued for and agreed upon at the rate of exchange of the date of demand, i. e., said December.

[10] But, in respect of the Deutsche Bank, that concern had a deposit account with plaintiffs in like manner, and for the same purposes that plaintiffs had their deposit account in Germany. By amendment duly allowed, Deutsche Bank had pleaded this deposit as a set-off, and also similarly pleaded indebtednesses arising on new and wholly different banking transactions be-between itself and Zimmerman & Forshay, amounting to a considerable sum of money.

The court below allowed as an offset Deutsche Bank's bank balance with Zimmerman & Forshay as the same existed on April 6, 1917; but refused to permit any further offsets though arising out of banking transactions of a somewhat similar nature. In this we think error was committed. At law a set-off is known to be of comparatively recent statutory origin, but law derived its whole doctrine from equity, and this suit is governed by equitable principles. One of those principles is to ascertain what was due by one party to the other at the commencement of the suit, so that, generally speaking, one party should be prevented from asserting offsets arising after suit begun. Holden v. Gilbert, 7 Paige, 208; Pate v. Gray, Fed. Cas. No. 10,794a.

The record does not inform us how much of defendant's offsets were due and payable on or before February 28, 1922. Therefore in the case of the Deutsche Bank the decree must be reversed and the cause remanded, with directions to strike an account as of February 28, 1922, between the parties, and to grant plaintiffs' recovery for whatever excess there may be in its favor; plaintiffs' claim being, of course, liquidated at the rate of exchange of December, 1921.

[11] In the case of the Wiener Bank, the foregoing recital of facts shows that no demand had been made prior to April 1, 1920. But there had arisen a difference of opinion as to the rate at which plaintiffs' old account would be available for exchange. Therefore, as we have held that these parties were subject to the operation of Austrian law, payment into court of all the kronen due

was a complete extinguishment of plaintiffs' demand on the Wiener Bank.

Let the decree in that case be reversed, and the cause remanded, with directions to dismiss the bill. The Wiener and Deutsche Banks will recover the costs of this court. No other costs here. The costs of the District Court are left to the discretion of that tribunal.